KANNE, Circuit Judge.
 

 The Birkenstocks have a history of problems with the Internal Revenue Service— everything from the IRS’s disagreement with their challenges to the legitimacy of the monetary system and their creation of a family trust to shelter tax liabilities to Mr. Birkenstock’s conviction for four consecutive years of failing to file income tax returns. Due to this pattern of recalcitrant conduct, the Birk-enstocks’ tax debts have risen to the point where a large percentage of their retirement benefits and social security payments has been levied upon by the government. In an effort to thwart the IRS once and for all, the Birkenstocks filed for chapter 7 bankruptcy, seeking a discharge of all debts, including their federal income tax obligations. The bankruptcy court, however, found their federal tax debts to be nondischargeable pursuant to § 523(a)(1)(C), and the district court agreed on appeal. We now determine that the bankruptcy court’s decision with respect to Joseph Birkenstock was correct, but because we find that the bankruptcy court clearly erred in determining that Generóse
 
 *949
 
 Birkenstock acted “willfully,” we reverse the district court’s affirmance of her tax debt nondischargeability.
 

 I. HISTORY
 

 Joseph and Generóse Birkenstock have filed joint federal income tax returns since their marriage in 1943. In 1950, Mr. Birkenstock and others organized the Formrite Tube Company, and Mr. Birkenstock served there as an engineer and as the company’s president until 1988.
 

 On their 1974 joint federal income tax return, the Birkenstocks indicated their receipt of $35,184.82 in United States currency, which they referred to as “pseudo-dollars.” Using a formula that supposedly accounted for the dollar’s true gold value, the Birken-stocks reduced this figure to a reported taxable income of $9,316.42 — apparently overlooking the fact that their tax liability would be paid in “pseudo-dollars” and therefore that “pseudo-dollars” were the appropriate measure of taxable income. The Internal Revenue Service determined that the Birken-stocks’ calculation of their taxable income for 1974 was improper, and it issued a statutory notice of deficiency, which was upheld by the United States Tax Court on May 21, 1979. We affirmed the Tax Court’s decision on March 16, 1981, holding that “[ojur research confirms the Commissioner’s contention that this case is but one ‘in a seemingly endless series of tax eases challenging the federal monetary system.’ ”
 
 Birkenstock v. Commissioner of Internal Revenue,
 
 646 F.2d 1185, 1186 (7th Cir.1981) (quoting Commissioner’s Brief, at 3).
 

 On November 26, 1975, during the pen-dency of litigation concerning their 1974 return, the Birkenstocks created, and then conveyed all their property to, the Joseph Birkenstock Equity Trust. The Birken-stocks initially retained a 37% beneficial interest in the trust, but this was subsequently transferred to their children effective February 15, 1981, and the Birkenstocks received no other money or property in exchange for transferring their property to the family trust. Among the property conveyed to the trust were the Birkenstocks’ home (subject to a mortgage), their lifetime incomes, and Mr. Birkenstoek’s approximately five hundred shares of stock in the Formrite Tube Company. After the conveyance, however, the Birkenstocks continued to live in their home rent free, and Mr. Birkenstock remained on the Formrite payroll and continued to receive his salary and other payments directly from Formrite. In the years that followed, the trust purchased various securities and real estate properties, but Mr. Birkenstock personally guaranteed loans taken out by the trust and used his personal monies to pay for repairs, utilities, and other expenses relating to trust properties.
 

 On their 1975 joint federal income tax return, the Birkenstocks deducted the costs of setting up the family trust. Additionally, on their joint returns for the years 1975 through 1979, the Birkenstocks attempted to assign their personal income to the family trust for federal income tax purposes. The IRS issued statutory notices of deficiency for these years, and in 1983 the Birkenstocks petitioned the Tax Court for a hearing. The Tax Court determined: (1) that the income the Birkenstocks had attempted to assign to the trust was taxable to them in them individual capacities; (2) that the costs of creating the family trust were nondeductible personal expenditures; and (3) that the Birkenstocks’ deficiencies for the years 1975 through 1979 were the result of negligence or an intentional disregard of the law. Thus, the Tax Court upheld the assessed deficiencies and imposed an additional 5 percent penalty against the Birkenstocks for negligence.
 

 From 1980 through 1983, during the dispute concerning their joint tax returns for 1975 through 1979, the Birkenstocks failed to file any returns at all. Accordingly, in 1986, a jury found Mr. Birkenstock guilty of willful failure to file income tax returns for the years 1980 through 1983, in violation of 26 U.S.C. § 7203. We subsequently affirmed his conviction in
 
 United States v. Birkenstock,
 
 823 F.2d 1026 (7th Cir.1987). Mr. Birkenstock was sentenced to serve six months in a work-release program followed by three years of probation, as well as to pay a $30,000 fine and the costs of prosecution. In addition, Mr. Birkenstock was ordered to file returns for 1980 through 1983, which he
 
 *950
 
 did, claiming no taxable income. The government subsequently filed a petition seeking revocation of Mr. Birkenstock’s probation on the ground that he had failed to make any payments toward his fine. Following a hearing on January 25, 1990, the district court revoked Mr. Birkenstock’s probation, finding that although he had the ability to pay at least some portion of the fine, he had declined to do so.
 

 During 1987, Mr. Birkenstock received $137,925 from Formrite, including approximately $44,000 from the cashing out of his retirement fund with the company. The IRS levied against much of this amount for taxes, fines, and court costs, and Mr. -Birkenstock actually received $19,000 from Formrite for the year. He did not use any of this money to pay tax arrearages, but instead used it to pay mortgage payments on some of the real estate properties held by the trust.
 

 In August of 1987, Mr. Birkenstock began receiving monthly social security payments. The payments were for $1,300, but after IRS levies Mr. Birkenstock received only $325 per month. According to IRS documents, the Birkenstocks actually overpaid their taxes during the years 1986 through 1988 (due to excessive withholding), and these credits were applied to satisfy the Birkenstocks’ tax liabilities for 1975 and 1976, and part of their liability for 1977. At no time did the Birken-stocks ever make a voluntary payment toward their liability for back taxes, interest, or penalties.
 

 On November 27, 1990, the Birkenstocks filed for bankruptcy liquidation under chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq. The government filed a timely proof of claim for income tax liabilities due for the years 1977 through 1979 and for the years 1980 through 1983 (further review of the returns Mr. Birkenstock had been ordered to submit revealed deficiencies). On March 1, 1991, the government commenced an adversary proceeding against the Birken-stocks, requesting that their discharge be denied pursuant to 11 U.S.C. § 727(a)(4). In the alternative, the government asserted that the Birkenstocks’ joint federal income tax liability from 1977 through 1979, as well as Mr. Birkenstock’s individual federal income tax liability from 1980 through 1983, should be ruled nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C), which excepts tax debts from discharge where the debtor has willfully attempted to evade or defeat them.
 

 The bankruptcy court determined that the Birkenstocks had not run afoul of § 727(a)(4) and thus were entitled to a discharge, but it ruled their federal income tax obligations to be nondischargeable, finding that the Birken-stocks’ entire history of conduct dating back to 1974 demonstrated “a continuing and unrelenting effort by the debtors to evade or defeat federal income taxes within the meaning of § 523(a)(1)(C).” The bankruptcy court held that the Birkenstocks’ joint tax liabilities for 1977 through 1979 were nondis-ehargeable to Mrs. Birkenstock as well as her husband because “[s]he signed the joint returns. She had to have knowledge of their failure to file returns and their failure to pay taxes.” The' district court affirmed the decision of the bankruptcy court, finding that the Birkenstocks’ actions “clearly go beyond mere oversights by an innocent party, and exhibit a voluntary, conscious, and intentional failure to fulfill federal income tax obligations.”
 

 II. Analysis
 

 Generally, in a chapter 7 discharge, all liabilities of the debtor arising prior to the filing of the bankruptcy petition are discharged. 11 U.S.C. § 727(b). Congress, however, intended that the fresh start provided by the bankruptcy discharge would apply only to the “honest but unfortunate debtor.”
 
 Grogan v. Garner,
 
 498 U.S. 279, 286-87, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). As a result, Congress provided in 11 U.S.C. § 523 for certain exceptions to the rule of discharge. In this case, the bankruptcy court ruled (and the district court affirmed) that the Birkenstocks’ federal income tax liabilities were nondischargeable under § 523(a)(1)(C), which provides:
 

 (a) A discharge under § 727 ... of this title does not discharge an individual debt- or from any debt — ■
 

 (1) for a tax or a customs duty—
 

 [[Image here]]
 

 
 *951
 
 (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax....
 

 The government has not claimed that the Birkenstoeks have “made a fraudulent return”;' rather, it has relied solely on the second portion of § 523(a)(1)(C). Thus, the question before us is whether the bankruptcy court erred in determining that the government presented sufficient evidence to prove by a preponderance of the evidence that the Birkenstoeks “willfully attempted in any manner to evade or defeat” their federal income tax liabilities.
 
 See Grogan,
 
 498 U.S. at 286-88, 111 S.Ct. at 659-60.
 

 As a threshold
 
 matter, the
 
 Birken-stocks argue that because the adversary proceeding concerned the nondischargeability of tax debts for the years 1977 through 1983, evidence of their conduct prior to 1977 (including the 1974 gold-standard filing and the creation of the family trust in 1975) is irrelevant and should not have been considered by the bankruptcy court. However, we addressed and rejected this identical argument on the appeal of Mr. Birkenstock’s conviction for failure to file tax returns.
 
 Birkenstock,
 
 823 F.2d at 1027-28. There, we determined: “The pattern of Birkenstoek’s behavior is relevant because it supports the jury’s determination that his failure to file was not based on mistake, inadvertence or confusion. The 1974 through 1979 returns were sufficiently related in time and character to be probative.”
 
 Id.
 
 at 1028. Here, too, the Birken-stocks’ tax history was relevant to the bankruptcy court’s determination of whether the Birkenstoeks willfully attempted to avoid a known tax duty. Although an attempt to defeat tax in 1974 will not except discharge of an unpaid tax liability for 1980, the earlier conduct is relevant evidence concerning whether the debtor’s actions in 1980 were the result of honest mistake or deliberate evasion.
 

 Thus, we turn to the Birkenstoeks’ primary contention, which is that even in light of all the evidence, the bankruptcy court erred in finding that the Birkenstoeks’ conduct constituted a willful attempt to evade or defeat tax liability for the years 1977 through 1983, within the meaning of the § 523(a)(1)(C) exception to discharge. We exercise plenary review over the bankruptcy and district courts’ legal interpretations of the Bankruptcy Code, including the exceptions to discharge.
 
 In re Forum Group, Inc.,
 
 82 F.3d 159, 163 (7th Cir.1996). Our review of the bankruptcy court’s findings of fact upon which a determination of nondis-chargeability is predicated, on the other hand, is deferential, and we will not reverse unless upon a review of the record we determine the bankruptcy court has made a clear error.
 
 Id.
 
 at 162-63.
 

 The plain language of the second part of § 523(a)(1)(C) comprises both a conduct requirement (that the debtor sought “in any manner to evade or defeat” his tax liability) and a mental state requirement (that the debtor did so “willfully”). 11 U.S.C. § 523(a)(1)(C). We address these two separate requirements in turn.
 

 Mindful of the general rule that exceptions to discharge are to be strictly construed in favor of the debtor, the courts have interpreted § 523(a)(l)(C)’s requirement that the debtor attempted to “evade or defeat tax” so as to best promote § 523’s purpose of limiting discharge to the honest but unfortunate debtor.
 
 See Grogan,
 
 498 U.S. at 286-87, 111 S.Ct. at 659. As such, nonpayment of tax alone is not sufficient to bar discharge of a tax liability.
 
 In re Haas,
 
 48 F.3d 1153, 1158 (11th Cir.1995). To hold otherwise would be to deny discharge to many honest debtors because mere nonpayment, without more, evidences “not dishonesty but [] the defining characteristic of all debtors — honest and dishonest, alike — insufficient resources to honor all of [one’s] obligations.”
 
 Id.
 
 at 1156.
 

 Instead, failure to pay a known tax duty is “relevant evidence which a court should consider in the totality of conduct to determine whether ... the debtor willfully attempted to evade or defeat taxes.”
 
 Dalton v. IRS,
 
 77 F.3d 1297, 1301 (10th Cir.1996). Thus, where nonpayment is coupled with a pattern of failing to file tax returns,
 
 see Toti v. United States,
 
 24 F.3d 806 (6th Cir.1994), or where a defendant takes other measures
 
 *952
 
 to conceal assets or income from the IRS, see
 
 Dalton,
 
 77 F.3d 1297;
 
 In re Bruner,
 
 55 F.3d 195 (5th Cir.1995), a court may reasonably find that the debtor sought to “evade or defeat” his tax liabilities.
 

 In
 
 Bruner,
 
 the Fifth Circuit considered a case quite analogous to the one before us today. In addition to not paying them tax obligations, the Bruners had failed to file returns for several years and had created a shell corporation, which they used to hold personal assets and to which they attempted to attribute some of them personal income. The Fifth Circuit held that the Bruners’ nonpayment, “when accompanied by a pattern of failure to file returns and coupled with conduct obviously aimed at concealing income and assets,” clearly constituted attempts to evade or defeat tax.
 
 Bruner,
 
 55 F.3d at 200.
 

 Here, the Birkenstocks’ conduct similarly went beyond merely not paying their taxes, including both a failure to file returns and an attempt to conceal income from the IRS. Mr. Birkenstock failed to file any returns for the years 1980 through 1983 until after he was convicted years later for willful failure to file. And during the years 1977 through 1979, the Birkenstocks had attempted to attribute their personal income to their family trust. In light of the circumstances surrounding the creation and operation of the trust—-that it was formed while the Birken-stocks’ attempts to avoid tax liability in 1974 were in dispute; that they received no consideration (other than a beneficial interest that they conveyed away) in exchange for their sweeping conveyances to the trust; that the Birkenstocks conveyed all their property to the trust, yet they continued to personally guarantee loans and personally pay expenses concerning the trust property; and that they conveyed all their income to the trust, but continued to receive salary and social security payments personally-the bankruptcy court was justified in determining that the Birken-stocks’ attribution of their income to the trust was, like Mr. Birkenstock’s pattern of failing to file returns, an attempt to evade or defeat their personal tax liabilities.
 

 Turning to the mental state requirement, the courts have interpreted “willfully,” for purposes of § 523(a)(1)(C), to require that the debtor’s attempts to avoid his tax liability were “voluntary, conscious, and intentional.”
 
 Toti,
 
 24 F.3d at 808. In other words, the debtor must both (1) know that he has a tax duty under the law, and (2) voluntarily and intentionally attempt to violate that duty.
 
 Bruner,
 
 55 F.3d at 197. This willfulness requirement prevents the application of the exception to debtors who make inadvertent mistakes, reserving nondis-chargeability for those whose efforts to evade tax liability are knowing and deliberate.
 

 In this case, there is ample evidence to support the bankruptcy court’s finding that Mr. Birkenstock’s attempts to avoid tax liability during the years in question were willful. With respect to the years 1980 through 1983, we have previously upheld a jury determination that Mr. Birkenstock’s was guilty of
 
 willfully
 
 failing to file returns, and the bankruptcy court’s determination to this effect is equally supportable. As for the years 1977 through 1979, Mr. Birkenstock’s own testimony demonstrates that he is college educated; that he participated directly with the lawyers and accountants in determining whether to form the trust, in actually creating the trust, and in deriving and reporting his taxable income during 1975 through 1979; and that he decided to form the trust despite knowledge that the IRS was investigating the use of such trusts as tax-shielding devices. This, in light of Mr. Birkenstock’s history of attempts to avoid federal income tax, and together with the nature and operation of the trust (which is discussed above), supports the determination that Mr. Birkenstock’s creation of the trust and subsequent attribution of his income to it was specifically intended to avoid known tax liabilities. The evidence disproves any contention that the trust was formed as an estate-planning device or for some other lawful purpose, or that Mr. Birkenstock’s use of the trust to conceal his personal income was an honest, inadvertent mistake.
 

 Mr. Birkenstock submits evidence of his paucity of income during the several years before he and his wife filed for bankruptcy (after the relevant years 1977 through 1983), arguing that the bankruptcy court was unfair
 
 *953
 
 in holding his inability to pay his tax liabilities against him. But Mr. Birkenstock misses the point. An inability to pay one’s debts is the defining characteristic of almost all debtors who file for bankruptcy. And just as nonpayment of tax alone will not justify non-dischargeability, an inability to pay debts in subsequent years is not a defense to previous intentional attempts to evade or conceal one’s tax liabilities. To hold otherwise would swallow the § 523(a)(1)(C) exception to discharge because even the most dishonest bankrupt can demonstrate an inability to pay his debts. Thus, the bankruptcy court did not err in finding that Mr. Birkenstock’s federal income tax liabilities for the years 1977 through 1983 are nondischargeable.
 

 Mrs.
 
 Birkenstock’s tax debts are a different story. In order to hold that Mrs. Birkenstock’s tax debts for the years 1977 through 1979 are nondischargeable, the bankruptcy court needed to find that her attempts to evade or defeat tax were willful — i.e., that she knew of the duty to pay the personal tax that was attributed to the trust and that she deliberately sought to conceal or evade that duty. The basis for the bankruptcy court’s making this finding that Mrs. Birkenstock’s debts were nondischargeable was that “[s]he signed the joint returns. She had to have knowledge of their failure to file returns and their failure to pay taxes.”
 
 [1]
 

 Initially, we note that Mrs. Birkenstoek’s knowledge of her husband’s failure to file returns for 1980 through 1983 is immaterial. With respect to Mrs. Birkenstock, the question before the bankruptcy court was whether her joint tax liability for the years
 
 1977 through 1979
 
 is nondischargeable, and thus the government was required to prove that she willfully attempted to evade those debts. But the fact that Mrs. Birkenstock must have known that her husband had a duty to file some kind of return during years when he earned income is not evidence that when her husband filed returns in earlier years, she was consciously aware of, and deliberately attempting to further, any underreporting contained in those returns.
 

 As a result, the only relevant evidence upon which the bankruptcy court rested its determination of Mrs. Birkenstock’s willfulness was that she signed the joint returns. Signing returns, however, is evidence that she had a legal tax duty; it is not necessarily evidence that she knew of that duty, nor that she deliberately sought to evade it. The record demonstrates that Mrs. Birkenstock has never held a job outside the home and that she does not take an active role in her family’s financial or estate planning because she considers such matters not her responsibility. She does have a checking account, but it contains only a small amount of money that she uses to buy groceries and other inexpensive items. Although the government elicited testimony from her that she never paid any money toward her or her husband’s back tax bills, mere nonpayment is not enough to satisfy the requirements of § 523(a)(1)(C); rather, her only conduct directed toward evading or defeating tax liability was the filing of returns assigning personal income to the family trust. The government needed to put forth evidence that this evasion was
 
 willful,
 
 and it did not. Therefore, because the record does not contain any evidence upon which the bankruptcy court could have supported a finding of Mrs. Birkenstock’s willfulness, its determination that her tax debts are nondis-chargeable constituted clear error.
 

 The judgment of the district court with respect to Joseph Birkenstock is hereby Affirmed, but the district court’s judgment concerning Generóse Birkenstock is Reversed.
 

 [1]
 

 . In affirming the decision of the bankruptcy court, the district court did not specifically discuss the applicability of § 523(a)(1)(C) relative to Mrs. Birkenstock, and thus it presumably adopted the bankruptcy court’s rationale with respect to her willfulness.