In re Mark R. THORNGREN and Beth A. Thorngren, Debtors.

Mark R. THORNGREN and Beth A. Thorngren, Plaintiffs,

v.

UNITED STATES of America, INTERNAL REVENUE SERVICE, Defendant.

Bankruptcy No. 95 B 08650. Adversary No. 95 A 510.

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

July 28, 1998.

**140**

William Lester, Lombard, IL, for Plaintiffs.

Stacey Hollett, U.S. Department of Justice, Tax Division, Washington, DC, for Defendant.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Bankruptcy Judge.

This matter is before the court on the complaint of Mark and Beth Thorngren

("Plaintiffs" or "Debtors") to have their debt to the United States of America Internal Revenue Service ("Defendant") for income taxes, penalties, and interest for the years 1983 through 1990 declared dischargeable. After a trial on the merits and for the reasons set forth below, the relief requested in their complaint is denied.

## FACTUAL BACKGROUND

In 1983, the Plaintiffs filed a joint voluntary petition under Chapter 7 of the Bankruptcy Code[1] and received their discharge. From 1983 through 1990, the Plaintiffs failed to timely file their federal income tax returns or to make payments of the tax due other than the amounts withheld from their paychecks. In the fall of 1990, the Defendant's criminal investigation division contacted the Plaintiffs concerning their failure to file for the years in question. In response, the Plaintiffs employed August Gatto ("Gatto"), their former accountant, to prepare their returns for those years.

By September of 1992, all of the Plaintiffs' missing returns had been prepared and filed.[2] Prior to the commencement of this Chapter 11 proceeding, the Plaintiffs submitted to the Defendant three Offers–in–Compromise for the tax debt which were never accepted. On May 2, 1995, the Plaintiffs filed for relief under Chapter 11 and thereafter commenced this adversary proceeding to obtain a discharge of their tax debt to the Defendant which, according to the claim filed by the Defendant, exceeds $300,000.

Pursuant to the Internal Revenue Code, the Defendant added fraud penalties to the original tax debt because the Plaintiffs had failed to timely file their income tax returns, had failed to pay their tax liability, and had claimed excessive exemptions on the W–4 forms which they submitted to their employers. During these years, the only payments that the Plaintiffs made on their tax debt were withheld from their paychecks; these

---

1. 11 U.S.C. § 101 *et seq.* All section references are to the Bankruptcy Code unless otherwise noted.

2. By July of 1992, all of the returns for 1983 through 1989 had been filed, except for Mrs. Thorngren's separate return for 1989. It was filed in September of 1992. The 1990 return was timely filed.

payments were inadequate due to the excessive exemptions claimed. The following chart compiles information from the Defendant's Proposed Findings of Fact and Conclusions of Law ("Def.'s FOF and COL") and the Defendant's Exhibits 1 through 8 (referred to as "Def.'s Ex. 1–8"). It lists the combined gross wages of the Plaintiffs during the years in question and the amounts which the Plaintiffs had withheld from their paychecks:

| YEAR | WAGES[3] | AMOUNT WITHHELD[4] |
|------|----------|--------------------|
| 1983 | $ 86,470 | $ 1,307 |
| 1984 | 115,509 | 955 |
| 1985 | 137,506 | 9[5] |
| 1986 | 122,397 | 2,020[6] |
| 1987 | 105,432 | 8,266 |
| 1988 | 83,546 | 4,277 |
| 1989 | 90,399 | 12,014 |
| 1990 | 96,394 | 14,086 |

The Defendant alleges that the Plaintiffs had claimed excessive exemptions on their W–4s for the years in question. *See* Def.'s FOF and COL, p. 5. Additionally, the Plaintiffs' own exhibit, the Income Tax Examination Report, indicates that the Plaintiffs had filed false W–4s even before the years in question. The Report states, "As of September/1980 the taxpayers filed false W–4 statements with their respective employers. They filed either "exempt" status or with at least 10 allowances for income tax withholding." *See* Pls.' Ex.L.

The Plaintiffs have offered three responses to these charges. First, although both Plaintiffs stated that they knew they had an obligation to file personal income tax returns, they suggest that Gatto misled them. Both Plaintiffs testified that Gatto had advised them that they probably would not owe any tax. *See* Plaintiffs' Post Trial Suggested Findings of Fact and Suggested Findings of Law ("Pls.' PT Brief"), p. 4. Moreover, Mr. Thorngren testified that after Gatto had prepared the 1979 income tax return, he advised the Plaintiffs that it was permissible for them to reduce the amount of tax withheld from their earnings by increasing the amount of exemptions claimed on their W–4s due to the

large amount of itemized deductions. *Id.* In contrast, Gatto testified that he had no recollection of any such conversation. *See* Pls.' PT Brief, p. 5.

Second, the Plaintiffs suggest that, in the years in question, they did not overstate their exemptions on their tax returns. *See* Plaintiffs' Suggested Findings of Fact and Suggested Findings [sic] of Law ("Pls.' FOF and FOL"), p. 1. For the returns which they filed for 1983 through 1988, they claimed six exemptions. For 1989, Mr. Thorngren claimed one, and Mrs. Thorngren claimed four. For 1990, they claimed four. During these years, the Plaintiffs had three dependent children and paid support for Mr. Thorngren's daughter from his first marriage, who lived with her mother.

The Plaintiffs raised a third defense in the Pls.' FOF and FOL. They state that Mr. Thorngren's misunderstanding of the meaning of the word "exempt" may have caused him to increase the number of exemptions he claimed on his W–4s. *See* Pls.' FOF and FOL, p. 3. Specifically, Mr. Thorngren claims that he used the word "exempt" on his W–4s to mean that if he did not owe any tax, he was exempt from tax. *Id.*

From 1973 through the present time, Mr. Thorngren has been employed by Helene Curtis Industries, Inc. in various management positions. During the years in question, Mrs. Thorngren was employed intermittently as a real estate sales person, selling newly constructed homes for developers of real estate subdivisions. Additionally, the Plaintiffs owned and managed several rental properties during the years in question.

The Defendant alleges that the Plaintiffs "lived a rather lavish lifestyle." *See* Defendant's Post Trial Brief ("Def.'s PT Brief"), p. 2. In 1988, the Plaintiffs purchased a new home for $260,000. They then had a $5,000 hot tub installed and extensive landscaping work done. During these years, they had a

---

**3.** *See* Defendant's PFOF and COL, p. 2.

**4.** *See* Defendant's Ex. 1–8.

**5.** The I.R.S. report for Mrs. Thorngren for 1985 does not list a withholding. It does list her

adjusted gross income as $77,740. *See* Def.Ex. 3.

**6.** For 1986, the Defendant did no present to the court an I.R.S. transcript for Mrs. Thorngren. *See* Def.Ex. 3.

maid. Although Mrs. Thorngren testified that their automobiles were not new when purchased, from 1981 through 1990, the Plaintiffs owned at least two cars at a time. These automobiles included a BMW, Porsche, Cadillac, and Mercedes. The Defendant alleges that the Plaintiffs' check receipts demonstrate that the Plaintiffs spent large sums of money on dining out, entertainment and clothing. The Plaintiffs took several vacations every year. Although they stated that Mr. Thorngren's employer paid for these vacations, the Plaintiffs did spend money while on these vacations. The Plaintiffs paid for some of their college-aged children's college and living expenses.

The Plaintiffs have asked that this court discharge their tax debt for the years in question. The Defendant claims that this debt should not be discharged because the Plaintiffs have "willfully" attempted to evade payment of these taxes.

### DISCUSSION

▇ Congress's purposes in enacting the Bankruptcy Code was to provide a fresh start to the "honest but unfortunate debtor." *In re Birkenstock,* 87 F.3d 947, 950 (7th Cir.1996) (citing *Grogan v. Garner,* 498 U.S. 279, 286–287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)). However, the Bankruptcy Code does include specific exceptions to the discharge of various debts of individuals. Section 523(a)(1)(C) provides that a discharge under Section 727 "... does not discharge an individual debtor from any debt—(1) for a tax or a customs duty—(C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax..." 11 U.S.C. § 523(a)(1)(C). The party claiming the exception to discharge bears the burden of proving by a preponderance of the evidence that the debt falls within the claimed exception to discharge.[7] *Grogan,* 498 U.S. at 291, 111 S.Ct. 654. The issue in this case is whether the government presented sufficient evidence to prove by a preponderance of the

evidence that the Plaintiffs "willfully attempted in any manner to evade or defeat" their federal income tax liabilities.

▇ To be willful, the courts have required that the debtor's attempt to avoid his tax liability was "voluntary, conscious, and intentional." *Birkenstock,* 87 F.3d at 952; *In re Toti,* 24 F.3d 806, 808 (6th Cir.1994). In other words, the government must show two things: (1) that the debtor knows he has a tax duty under the law; and (2) that he voluntarily and intentionally attempted to violate that duty. *Birkenstock,* 87 F.3d at 952; *In re Bruner,* 55 F.3d 195, 197 (5th Cir.1995). This willfulness requirement prevents the application of the exception to debtors who make inadvertent mistakes, reserving nondischargeability for those whose efforts to evade tax liability are knowing and deliberate. *Birkenstock,* 87 F.3d at 952.

As to the first prong of this two prong test, both Plaintiffs admitted that they knew that they had a duty to file federal income tax returns. Neither could offer a clear excuse for their failure to file. Thus, the court must focus on the second prong of this test.

▇ Hence, the narrow issue becomes whether they voluntarily and intentionally attempted to violate their tax duty. "[W]here nonpayment is coupled with a pattern of failing to file tax returns, or where a defendant takes other measures to conceal assets or income from the IRS, a court may reasonably find that the debtor sought to 'evade or defeat' his tax liabilities." *Id.* at 951. Under the facts of this case, the Plaintiffs admitted that they failed to file returns for the years in question until contacted by the Defendant's Criminal Investigation Division and paid on their tax debt only the amounts that were withheld from their paychecks. Moreover, the Defendant charges that the Plaintiffs increased the number of exemptions on the W–4 forms which they submitted to their employers so that inade-

---

**7.** The Plaintiffs initiated the adversary proceeding and therefore hold the burden of proof to show that their taxes are dischargeable. However, because the Defendant is asserting the affirmative defense that the Plaintiffs "willfully at-

tempted to evade or defeat [their] taxes," the burden has shifted to the Defendant to prove that the taxes are not dischargeable. *In re Sommers,* 209 B.R. 471, 477 (Bankr.N.D.Ill.1997).

quate amounts were withheld from their wages.

The Plaintiffs argue that their tax debt should be discharged because they did not "willfully" attempt to evade or defeat their tax liability. First, the Plaintiffs suggest their behavior was not willful because Gatto mislead them. They state Gatto told them that they would not owe any tax for the years 1983 and 1984. *See* Pls.' PT Brief, p. 7. Gatto prepared and signed the extensions for 1983 and 1984 income tax returns. *Id.* at 8. They suggest that this court should hold that Gatto is responsible for determining at the time that the extensions for 1983 and 1984 were filed that the Plaintiffs would not owe any income taxes for these years. *Id.* However, even if Gatto did tell them that they probably would not owe any tax for these years, they still had a duty to file tax returns. Moreover, as this court has previously ruled, Mr. Thorngren's deposition indicated that he may have stopped filing his returns in order to evade detection. *See Thorngren v. United States of America Internal Revenue Service,* Adv. No. 95 A 510, slip op. at p. 4 (Bankr. N.D.Ill. Feb. 10, 1998). ("In his deposition, Mr. Thorngren states, '[a]nd then ultimately the next year when I still hadn't filed, my accountant kind of told me that I must be lost in the system and I probably shouldn't file because that way they wouldn't find me.' ") *Id.*

Second, Mr. Thorngren suggests that he may have misunderstood the meaning of the word "exempt" when filling out his W–4s. *See* Pls.' FOF and FOL, p. 3. He believed that if he "did not owe any tax, he was exempt from tax." *Id.* Given his education and his business experience, Mr. Thorngren's testimony that he may have misunderstood the meaning of the word "exempt" is unpersuasive.

Moreover, the fact that the Plaintiffs had so little withheld from their W–4s for the years in question supports the contention that they intentionally increased their exemptions so that very little would be withheld from their wages. For example, in 1984, the Plaintiffs only had $955 withheld from their paychecks when they had a combined gross income of $115,509. *See* Def.Ex.

2. The Defendant's transcript for this year lists an additional tax assessment of $8,740. *Id.* In 1985, Mr. Thorngren had merely $9 withheld from his paycheck while he had a taxable income of $80,037. *See* Def.Ex. 3. The Defendant's transcript for 1985 lists an additional tax assessment of $21,236. *Id.*

■ In deciding whether the Plaintiffs acted willfully, this court can consider the pattern that the Plaintiffs' behavior created in the years preceding their bankruptcy filing. *Birkenstock,* 87 F.3d at 951. This pattern will support the determination of whether or not the debtor's failure to file was based on mistake, inadvertence or confusion. *Id.* The Plaintiffs' own exhibit suggests that they have a history of increasing their exemptions on their W–4s so that less tax would be withheld than was due. The Income Tax Examination Report states, "As of September/1980 the taxpayers filed false W–4 statements with their respective employers. They filed either "exempt" status or with at least 10 allowances for income tax withholding." *See* Pls.' Ex.L.

■ The purpose of the Bankruptcy Code is to allow the honest debtor a fresh start. *See In re Toti,* 24 F.3d 806, 806. The Plaintiffs, however, are not the type of debtors entitled to such a fresh start. During the years in question, the Plaintiffs had plenty of money to buy a new home, install a hot tub, and landscape their yard. Even though the cars they purchased were not new, the Plaintiffs owned expensive automobiles. They spent money on dining, entertainment, clothing, and vacationing. They were able to afford to have a maid in their home. They paid a portion of their college-aged children's living and tuition expenses. The Plaintiffs had the funds available to pay their taxes but simply did not do so.

■ Whether a debtor willfully attempted to evade the payment of taxes is a question of fact to be determined by the totality of the circumstances. *In re Sommers,* 209 B.R. 471, 478 (Bankr.N.D.Ill.1997) (citing *In re Berzon,* 145 B.R. 247, 250 (Bankr.N.D.Ill. 1992)). In the facts of this case, the Plaintiffs did not file their federal income tax returns for seven years, and then only did so

after the Defendant's Criminal Investigation Division contacted them. The Plaintiffs misstated the number of exemptions on the W–4 forms which they submitted to their employers. After hearing the testimony of the debtors and the other witnesses, and after examining the evidence, it is clear that the totality of these circumstances indicate that the Plaintiffs willfully attempted to evade paying their federal income taxes. Thus, judgment is entered in favor of the Defendant.

## CONCLUSION

For the reasons stated above, judgment will be entered in favor of the Defendant.