**In re Robert Michael LONG, Debtor.**

**Robert Michael Long, Plaintiff,**

**v.**

**United States of America, Defendant.**

**Bankruptcy No. 08–332.
Adversary No. 08–63.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Sept. 18, 2009.

Robert N. Reynolds, Robert N. Reynolds PA, Winter Park, FL, Ronald Cutler, Ronald Cutler PA, Daytona Beach, FL, for Plaintiff.

Katherine P. Walsh, U.S. Department of Justice—Tax Division, Thomas F. Koelbl,

U.S. Department of Justice, Washington, DC, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This proceeding came before the Court upon a complaint filed by Robert Long ("Long") seeking a determination of the dischargeability of his tax liabilities for the years 1999, 2000, and 2001. The Court conducted a trial on the matter on June 17, 2009. In lieu of oral argument, the Court directed the parties to file post-trial memoranda in support of their respective positions. Upon the evidence and the arguments of the parties, the Court makes the following Findings of Fact and Conclusions of Law.

### *Findings of Fact*

During the years at issue in this case, Long owned and ran a successful McDonald's franchise through a partnership, R & R Ltd. (Tr. at pp. 18–19.) Long and his father formed R & R Ltd. and purchased the McDonald's in 1996.[1] (Tr. at p. 18.) In 1997 Long bought his father's interest and became the principal owner. (*Id.*)

As the proprietor of a McDonald's franchise Long earned a significant amount of income. Long earned taxable income of $231,139.00 in 1999, $316,848.00 in 2000, and $729,930.00 in 2001. (Def.'s Exs. 1–3.) These amounts represented Long's distributive share of partnership income. Despite the franchise's profitability Long did not draw a paycheck from his business. (Tr. at p. 21). Instead, he withdrew money from the McDonald's business account whenever he needed funds. (*Id.*) Long

spent the money on drugs, alcohol, and gambling and did not set aside any money to satisfy the taxes on the profits he earned through the business.

Martin S. Magida is an accountant who handled the books and tax returns for both the McDonald's franchise and for Long personally. (Tr. at p. 21; Def.'s Ex. 15 ("Magida Depo.") at p. 5.) As the accountant for the McDonald's, Magida prepared monthly financial statements for the business and kept its general ledger. (Tr. at pp. 21–22; Magida Depo. at p. 6.) In this capacity, Magida spoke to Long about once a month, both to obtain information from Long to prepare financial statements for his business, and to discuss the completed financial statements. (Magida Depo. at p. 8.) Long was Magida's main point of contact regarding the McDonald's. (*Id.* at p. 9.)

Magida also prepared Long's state and federal business and personal income tax returns. (Magida Depo. at pp. 18–25.) After he prepared the tax returns, Magida mailed them to Long to sign and file. (Magida Depo. at pp. 12–13, 38.) Magida testified that he never filed tax returns on behalf of a client. (*Id.* at 13.) Additionally, Magida did not have access to or authority over any of Long's personal or business bank accounts and did not pay bills on his behalf. (Magida Depo. at pp. 13–14.) Magida prepared Long's 1999 federal partnership return on April 12, 2000. (Def's. Ex. 4; Magida Depo at p. 19.) Magida prepared Long's 2000 federal partnership return on September 4, 2002. (Def.'s Ex. 5; Magida Depo at p. 20.) Magida prepared Long's 2001 federal partnership return on September 23, 2002. (Def.'s Ex. 6; Magida Depo at p. 21.)

---

1. Long's daughter had a small minority interest in the business, which was operated as a partnership. (Tr. pp. 18–19.)

Magida testified that he would have mailed Long's 1999, 2000, and 2001 personal returns to Long in the same envelope with each of the respective partnership returns. (Magida Depo. at pp. 19–21.)

In April 2001 Long sold his interest in the McDonald's franchise for $800,000.00. (Def.'s Ex. 14.) At that time Magida discussed the tax consequences of the sale with Long and gave him a rough estimate of the amount of taxes that would be due once the business was sold. (Magida Depo. at p. 35.)

Q: Did you ever discuss with Mr. Long whether or not he had to pay taxes on that sale?

A: Oh, sure, and we would have done that, we would have discussed that prior to the actual preparation of the return so he would have some idea of the amount of taxes that would be due on it so it wouldn't be a surprise to him. That is part of the planning process that we do with any of our clients, including him.

(*Id.*) The closing statement provided for a purchase price of $800,000, various expenses, and an escrow of $120,000. (Def.'s Ex. 14.) Long was to receive $511,306.73 in cash. (*Id.*) The escrow eventually closed and sometime thereafter an additional $29,988.90 was paid to Long. (*Id.*)

Despite earning taxable income of $231,139.00 in 1999, $316,848.00 in 2000, and $729,930.00 in 2001 and having received completed tax returns from Magida, Long failed to timely file the tax returns (federal income, state income, or federal partnership) for those years. (Def.'s Exs. 1–6, 9–11.) As the Court noted, Long also did not set aside any money to pay the income taxes, opting instead to spend the money on drugs, alcohol, and gambling.

Despite Long's abuse of alcohol and drugs throughout 1999, 2000, and 2001, his business was successful. Although Long

testified that he was an absentee owner who relied on a manager to operate the franchise, at a minimum Long possessed the acumen and wherewithal to hire a manager who in turn successfully managed the business. Additionally, Long consistently paid his ex-wife $350 per month in child support without missing a payment. (Tr. at p. 30.)

In 2004 Long moved to Florida and began trying to get his life together. (Tr. at pp. 15, 24.) In September 2005 Long filed his delinquent personal federal income tax returns for 1999, 2000, and 2001. (Def.'s Exs. 1–3.) Long did not file the returns prepared and sent to him by Magida on the respective dates of April 12, 2000, September 4, 2002, and September 23, 2002. The returns filed by Long were prepared by another accountant. (*Id.*)

In the fall of 2005 Long also filed his 1999, 2000, and 2001 Illinois income tax returns and his 1999, 2000, and 2001 federal partnership tax returns. (Tr. at pp. 22–25; Def.'s Exs. 4–6, 9–11.) The state income tax returns and federal partnership returns which Long filed were the returns that Magida had prepared and sent to Long years earlier, although some of the returns were altered. (Tr. at pp. 25–28.)

Long provided three inconsistent reasons why he did not pay his 1999, 2000, and 2001 personal federal income taxes. First, Long stated that he was aware that he did not pay his taxes, but that he had no money to do so. In his responses to the United States' interrogatories, Long stated that all his money earned in the years at issue "went to gambling, alcohol, and drugs. I lost all the money earned and had no money to pay the taxes. I hoped [I] could win money to pay the taxes, but I lost all the money." (Def.'s Ex. 16, answer to interrogatory 6.) At trial, however, Long testified that he was not

aware until 2005 that he did not pay his taxes, and that he thought Magida was filing his returns and paying his taxes for him. (Tr. at pp. 15, 28.) Finally, Long also testified at trial—inconsistently—that he thought the taxes for at least 2001 were being paid out of the proceeds of the sale of his McDonald's franchise. (*Id.* at pp. 14, 29.)

Long further testified at trial that he had never received prepared returns from Magida, though he later admitted that at least some of the returns Magida prepared, and which Long later filed, were in his possession the entire time. (*Id.* at pp. 27–28.) Additionally, Long testified that after learning that his taxes had not been paid, he never contacted Magida to inquire why the returns he later admitted Magida prepared had not been filed. (*Id.* at p. 28.)

### Conclusions of Law

■■■ The issue before the Court is whether Long "willfully attempted in any manner to evade or defeat" his taxes for 1999, 2000, and 2001 under 11 U.S.C. § 523(a)(1)(C). Section 523(a)(1)(C) renders non-dischargeable any tax debt "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." The Eleventh Circuit has held that this language means that the government must prove both a conduct and a mental element by a preponderance of the evidence. *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir. 2000) (citing *Grogan v. Garner*, 498 U.S. 279, 287–88, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)).

### Conduct Requirement of § 523(a)(1)(C)

■■■ With regard to the conduct element, "the plain statutory language simply requires that the debtor have 'attempted in *any manner* to evade or defeat tax.'" *In re Fretz*, 244 F.3d 1323, 1329 (11th Cir.2001) (emphasis added) (internal cita-

tion omitted). This means that the government can satisfy the conduct requirement by showing that Long engaged either in acts of commission or culpable acts of omission. *In re Jacobs*, 490 F.3d 913, 921 (11th Cir.2007). The failure to file tax returns, coupled with the failure to pay taxes, satisfies the conduct requirement. *Fretz*, 244 F.3d at 1329 (holding that debtor who failed to file income tax returns and failed to pay tax satisfied § 523(a)(1)(C)'s conduct requirement despite no affirmative conduct to evade taxes). *See also In re Mitchell* 2009 WL 1370996 (Bankr.M.D.Ga. 2009) (holding the conduct element satisfied where debtor failed to timely file tax returns and failed to pay taxes for those years); *In re Hamer*, 328 B.R. 825, 834 (Bankr.N.D.Ala.2005) (holding the conduct element satisfied where debtor earned income during the tax years at issue but did not make any estimated tax payments, had inadequate or no withholdings, and late-filed his tax returns).

Long's failure to file his 1999, 2000, and 2001 federal income tax returns, coupled with his failure to pay his taxes, clearly satisfies the conduct requirement of § 523(a)(1)(C).

### Mental State Requirement of § 523(a)(1)(C)

■■■ In order to satisfy the mental state requirement, the government must prove that Long: (1) had a duty to file income tax returns and pay taxes; (2) knew he had such a duty; and (3) voluntarily and intentionally violated that duty. *Fretz*, 244 F.3d at 1330 (citing *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir.2000)). In order to show that Long voluntarily and intentionally violated his duty to pay, it is not necessary to establish fraudulent intent. *In re Jacobs*, 490 F.3d at 924. "The third or willfulness component of the mental state requirement 'prevents the application of the exception to debtors who

make inadvertent mistakes, reserving non-dischargeability for those whose efforts to evade tax liability are knowing and deliberate.'" *Fretz,* 244 F.3d at 1330 (quoting *In re Birkenstock,* 87 F.3d 947, 952 (7th Cir.1996)).

■ There is no dispute that Long had a duty to file income tax returns and pay taxes and knew he had such a duty. The dispute centers around whether Long voluntarily and intentionally violated that duty. In his first explanation for his failure to file his tax returns and pay his taxes, Long admitted that it was done knowingly and intentionally. In his responses to the United States' interrogatories, Long stated that he knew that he owed taxes but that he had gambled away all of his money and hoped that he could win money back to pay the taxes he owed. Thus, Long knew that he owed taxes but made an intentional and voluntary choice to use his money for gambling rather than paying the taxes. Such actions, even if done in a good faith attempt to win enough money to pay his taxes in full, demonstrate that Long's failure to file his tax returns and pay his taxes was willful.

■ Even if the Court were to disregard Long's initial explanation for why he did not file his tax returns or pay his taxes, his subsequent, inconsistent explanations also demonstrate that his actions were willful. At trial Long provided two explanations for his failure to file and pay his taxes. First, Long claimed that he abused alcohol and cocaine to the point that he could not take care of his finances and that he thought his accountant, Magida, was paying his taxes for him. Long's own actions belie his claim. Long was able to acquire, run, and sell a successful McDonald's franchise during years in which he claims drugs and alcohol prevented him from properly handling his affairs. He spoke to his accountant on a monthly basis

regarding the finances of his business. Additionally, during this time, Long paid monthly child support to his ex-wife without missing a payment. Even if Long's drug addiction had impaired him from managing these affairs, he cannot use his addictions as an excuse for failing to pay his taxes. An expensive drug habit does not render a debtor's failure to pay taxes involuntary and unintentional. *In re Geiger,* 2008 WL 1902048 (Bankr.C.D.Ill.2008).

Long's claim that he thought his accountant was filing and paying his taxes is also contradicted by the evidence. When Long eventually filed tax returns for the years at issue in this case, several of the returns he filed—his 1999, 2000, and 2001 Illinois income tax returns and his 1999, 2000, and 2001 federal partnership returns—were returns that his accountant, Magida, had prepared and sent to Long years earlier, although some of the returns were altered. Long admitted that these returns were in his possession the entire time. His assertions that he was not aware his returns had not been filed are not credible.

The documentary evidence is corroborated by Magida's testimony. Magida testified that he never filed tax returns for Long but instead prepared and sent returns to Long for him to file himself. Magida testified that he never had access to or authority over any of Long's personal or business bank accounts and did not pay bills on his behalf. Long's second explanation for his failure to file his tax returns and pay his taxes conflicts not only with his first explanation—that he knew he owed taxes and hoped to earn money gambling to pay them in full—but also with the documentary evidence and the testimony of his own accountant, which establish that Long's actions were taken with knowledge of the tax debts at issue.

Similarly, Long's third, conflicting explanation for his failure to file or pay his taxes—that he thought his taxes for 2001 were being paid out of the proceeds of the sale of his McDonald's franchise—is not supported by any documentary evidence or Magida's testimony and is nothing more than a red herring. The fact that Long possessed and eventually filed tax returns for 2001 that Magida had prepared for him belies Long's assertion that he thought all of his taxes were being paid by another source. Additionally, when Long sold the McDonald's franchise, Magida discussed the tax consequences of the sale with him and gave him a rough estimate of the amount of taxes that would be due once the business was sold.

Q: Did you ever discuss with Mr. Long whether or not he had to pay taxes on that sale?

A: Oh, sure, and we would have done that, we would have discussed that prior to the actual preparation of the return so he would have some idea of the amount of taxes that would be due on it so it wouldn't be a surprise to him. That is part of the planning process that we do with any of our clients, including him.

(Magida Depo. p. 35.)

The Court finds that the evidence establishes that Long's conduct was willful. Long's accountant prepared and sent to Long tax returns for each of the years at issue, but Long did not file them as the law requires. Instead, Long held on to the returns and did not file them until after he had spent all of his money on alcohol, drugs, and gambling. Long has provided various, inconsistent reasons why he did this, but none of his explanations excuses his conduct. Instead, the evidence shows that Long's failure to file his tax returns and pay his taxes was willful.

## Conclusion

Long meets both the conduct and willfulness requirements of 11 U.S.C. 523(a)(1)(C) for the years at issue. Long's failure to file his 1999, 2000, and 2001 federal income tax returns, coupled with his failure to pay his taxes, clearly satisfies the conduct requirement of § 523(a)(1)(C). Additionally, Long had a duty to file income tax returns and pay taxes for the 1999, 2000, and 2001 tax years, knew he had such a duty, and voluntarily and intentionally violated that duty. Accordingly, the Court finds that Long's 1999, 2000, and 2001 federal income tax liabilities are excepted from his discharge pursuant to § 523(a)(1)(C). The Court will enter a separate judgment consistent with these Findings of Fact and Conclusions of Law.