**In the matter Lee Steven DAGOSTINI, Debtor.**

**Lee Steven Dagostini, Plaintiff,**

v.

**Wisconsin Department of Revenue, Defendant.**

**Bankruptcy No. 09–33055–JES. Adversary No. 11–2406–JES.**

United States Bankruptcy Court, E.D. Wisconsin.

Oct. 11, 2012.

Lee Dagostini, Bradford, PA, pro se.

Mark Bromley, Wisconsin Department of Justice, Madison, WI, for Defendant.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This adversary proceeding was commenced by the debtor, Lee Steven Dagostini, against defendant, Wisconsin Department of Revenue ("Department"), seeking a determination that his tax debt owed to the Department was discharged by virtue of the chapter 7 discharge issued to him on December 23, 2009. The Department answered, asserting that the tax debt was excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C). This adversary proceeding came on for trial on October 1, 2012. At its conclusion, this matter was taken under advisement.

This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and (b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### Facts

On December 1, 2005, a federal criminal judgment was entered against the debtor, following his guilty plea, convicting him of money laundering, mail fraud, possession of unauthorized access devices, and conspiracy to launder funds while subject to a release order. The debtor had obtained proceeds from a credit card scheme which he devised, whereby he applied for and received credit cards using fictitious names and then maxed out all available cash advances. Over a period of approximately 10 years, the debtor illegally obtained over $2 million from 15 or more credit card issuers. The debtor was sentenced to 151 months in federal prison and ordered to

pay restitution in an amount exceeding $1.2 million.

In December, 2007, the Department, upon learning of his conviction, audited the debtor and his wife, Sandra Randall Dagostini, for purposes of determining whether or not all of the proceeds received from his criminal enterprise were reported. The Department determined that the tax returns in question materially understated the debtor's tax liabilities. It then assessed the under-reported income to the debtor's 2002 tax obligation, resulting in a tax assessment in excess of $148,000, which consisted of actual tax, interest, and penalties. The debtor did not appeal or otherwise contest the tax assessment or the Department's allocation to his 2002 tax return.

■ On September 10, 2009, the debtor filed for bankruptcy relief under chapter 7 of the Bankruptcy Code. Neither the debtor nor the Department sought a determination of dischargeability of the Department's claim while the bankruptcy case was pending, and on December 23, 2009, the debtor was granted a chapter 7 discharge. On June 6, 2011, the debtor filed this adversary proceeding seeking a determination that his income tax debt to the Department was discharged. He further alleged that the Department violated both the automatic stay and the discharge injunction by its attempt to collect on the tax debt.[1]

*Analysis*

■ Section 523(a)(1)(C) excepts from discharge any debt for a tax "with respect to which the debtor made a fraudulent return *or* willfully attempted in any manner to evade or defeat such tax ..." 11 U.S.C. § 523(a)(1)(C) (emphasis added). This section contains two separate grounds, either of which, if proven, supports a finding of non-dischargeability. The Department relies on both grounds in contending that the tax debt is non-dischargeable. The question before this court, therefore, is whether the debtor made a fraudulent return or, in the alternative, willfully attempted to evade or defeat a tax. The Department has the burden of proof by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### Did the debtor file a fraudulent return?

■ In order to establish that a tax return is fraudulent within the meaning of 11 U.S.C. § 523(a)(1)(C), the standard for proving fraud is the same as the standard for proving a civil fraud penalty under the Internal Revenue Code. *In re Sommers*, 209 B.R. 471, 481 (Bankr.N.D.Ill.1997). Because direct evidence of fraud is seldom demonstrated, the court may infer fraud from the record after a survey of the taxpayer's entire course of conduct. *Patton v. Comm'r of Internal Revenue*, 799 F.2d 166, 171 (5th Cir.1986).

---

1. The Department admitted in its response to plaintiff's first motion for partial summary judgment that there was a technical violation of § 362 when it issued a tax warrant on September 30, 2009. This tax warrant was later withdrawn on March 24, 2011. By order dated April 19, 2012, the court granted plaintiff's motion for partial summary judgment on the issue of whether or not the defendant violated the automatic stay and reserved for trial a determination of what damages, if any, resulted from such violation. At trial the debtor elicited no testimony as to damages. The court concludes that the Department's actions constituted a mere technical violation and declines to award damages. *See Miller v. U.S.*, 422 B.R. 168 (W.D.Wis.2010) (a court need not impose sanctions when there has been a mere technical violation of the automatic stay) (citation omitted).

■ At trial, the debtor argued that to prove fraud the Department must establish that his actual income for the tax year 2002 exceeded $48,000, the amount he reported on his 2002 income tax return [2]. However, the debtor's own testimony established that his 2002 tax return was fraudulent. On cross examination, the following testimony was elicited from the debtor:

Q: Is it your statement that the tax returns you did prepare and file were not designed to report your actual income, but were designed to report enough income to avoid detection of your criminal activities?

A: That is correct.

Q: So you had no intention of trying to report an accurate amount of income, but rather sought to report an income that would cause the taxing authorities to ignore you?

A: Um, yes and no, I didn't believe I needed to file taxes.

Q: But when you structured your reporting of income, it was your intention to evade detection of your criminal enterprise, correct?

A: Correct.

Q: And you knew that if you reported all of the income of your criminal enterprise, you would be detected as a criminal, correct?

A: I do not understand the question.

Q: How did you figure out how much income to report, Mr. Dagostini?

A: Just enough to justify my lifestyle.... It was a guess.

Q: Did it have any relationship to any actual figure of income?

A: No.

In addition, the debtor's testimony revealed several badges of fraud, which include debtor's failure to maintain adequate records, implausible behavior, and unreported income derived from illegal activity. *See In re Vaughn*, 463 B.R. 531, 542 (Bankr.D.Colo.2001) (setting forth the common law badges of fraud which a court may consider). The court is persuaded that the debtor's tax return was prepared with complete disregard for his actual income and for the sole purpose of evading detection of his ongoing criminal enterprise. Such return was, therefore, fraudulent within the meaning of 11 U.S.C. § 523(a)(1)(C).

### Did the debtor willfully attempt to evade or defeat a tax?

■ Even though the court's finding that the debtor filed a fraudulent return is sufficient to render this debt non-dischargeable, the court shall also address the second ground for non-dischargeability under 11 U.S.C. § 523(a)(1)(C), namely, whether the debtor willfully attempted to evade or defeat a tax. Whether a debtor willfully attempted to evade or defeat a tax is a question of fact to be determined based on the totality of the circumstances. *Matter of Birkenstock*, 87 F.3d 947, 951 (7th Cir.1996). In *Birkenstock*, the Seventh Circuit determined that willfulness encompasses both a conduct requirement and a mental state requirement. *Id.* at 951. *Birkenstock* declares that a debtor must know he had a duty to pay the tax,

---

**2.** On August 27, 2012, the debtor filed a motion *in limine* seeking a "ruling permitting [him] to challenge the validity of the amount ($1.2 mil) of illegal proceeds allocated to the tax year 2002 ...") By order dated September 13, 2012, the court denied the debtor's motion finding that issue preclusion applies to exclude any evidence or testimony contesting the validity or amount of the Department's claim. On September 4, 2012, the court entered an order denying the debtor's motion to reconsider the court's September 13, 2012 order.

and voluntarily and intentionally violated that duty. *Id.* at 952.

■■■ The debtor claims that he did not know he had a duty to pay taxes on the proceeds he obtained from of his criminal enterprise. He characterized his criminal proceeds not as income, but rather as "debt" because the proceeds were derived from the use of lines of credit. He then reasoned that he did not have to pay taxes on the "debt". Counsel for the Department in his closing argument noted that "debt" requires an intent to repay. The debtor did not have any intent to repay. At trial, he testified as follows:

Q: Mr. Dagostini, did you think that the money you were getting from the credit card companies was a gift from them to you?

A: No, I stole it from them.

Further evidence of willfulness is debtor's extravagant spending. *See U.S. v. Clayton,* 468 B.R. 763 (M.D.N.C.2012) (extravagant spending is an indication that a debtor acted willfully in the evasion of his tax obligations). In the case at bar, the debtor testified that in 2004 he purchased a home for over $700,000.

Although the debtor's education did not continue beyond high school, he clearly has "street smarts", as was demonstrated by his ability to concoct an elaborate credit card scheme aimed at avoiding detection. The court rejects debtor's claim that he did not know he had a duty to pay taxes on his illegally obtained proceeds. The court concludes that the debtor knew the proceeds he derived from his illegal activities were reportable income and, accordingly, the conduct requirement for non-dischargeability based on attempting to evade or defeat a tax has been established. The court also concludes that the debtor acted "knowingly and deliberately" and, therefore, the mental state component required to show he willfully attempted to evade or

defeat his tax obligation has also been established. *See In re Mitchell,* 633 F.3d 1319, 1328 (11th Cir.2011) (a debtor acts willfully when his attempt to avoid tax liability is done knowingly and deliberately). The debtor's attempt to justify his actions by claiming he was "stressed" and "on drugs" was not persuasive. Accordingly, the second ground for non-dischargeability under 11 U.S.C. § 523(a)(1)(C) has also been proven.

### Conclusion

■■■ The court is mindful that exceptions to discharge are to be construed strictly against the creditor and narrowly in favor of the debtor. *Matter of Scarlata,* 979 F.2d 521, 524 (7th Cir.1992). However, the well-recognized underlying policy of 11 U.S.C. § 523(a)(1)(C) is to limit discharge to the honest but unfortunate debtor. *Grogan v. Garner,* 498 U.S. 279, 286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The debtor in this case does not qualify as an honest but unfortunate debtor.

For these reasons, the court finds that the Department has amply carried its burden of proving by a preponderance of the evidence, (1) that the debtor filed a fraudulent return and, (2) that the debtor willfully attempted to evade or defeat a tax. Therefore, the debt owed from the debtor to the Department is excepted from discharge under 11 U.S.C. § 523(a)(1)(C).

The foregoing constitutes this court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052. A separate order shall be entered.

### ORDER FOR JUDGMENT

The court having this date issued its written decision,

IT IS HEREBY ORDERED that judgment be entered in favor of the defendant, Wisconsin Department of Revenue, against the plaintiff, Lee Steven Dagostini, declar-

ing that the debt owed by the plaintiff to the defendant is nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C).

IT IS FURTHER ORDERED that no sanctions shall be imposed against the defendant, Wisconsin Department of Revenue, for its violation of the automatic stay and which was found to be a technical violation with no proven damages.