**In re Russell Simms JOHNSON, and Alice Andrews Johnson, Debtors.**

**Russell Simms Johnson, and Alice Andrews Johnson, Plaintiffs,**

**v.**

**United States of America (Internal Revenue Service), Defendant.**

Bankruptcy No. 397–32761–HCA–7. Adversary No. 399–3154.

United States Bankruptcy Court, N.D. Texas, Dallas Division.

May 12, 2000.

Eric A. Liepins, Dallas, TX, for Debtors.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came before the Court for trial on December 10, 1999, the Complaint to Determine Dischargeability of Taxes ("Complaint"), filed by the Debtors. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 151, and the standing order of reference in this district. This Matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (I) & (O). The Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052:

### Findings of Fact

1. The Plaintiffs filed this bankruptcy on March 27, 1997.

2. At the commencement of the trial, the plaintiffs admitted that their liabilities to the IRS for 1993 and 1994 were not subject to discharge.

3. Plaintiff's [1] testimony was, on the whole, not credible.

4. The United States announced during its opening remarks that is was relying on 11 U.S.C. § 523(a)(1)(C) to deny plaintiff the discharge he sought. The plaintiffs did not object to the United States relying on this provision of the law. The issue as to § 523(a)(1)(C) was tried by consent.

5. The Internal Revenue Service ("IRS") properly filed and perfected prepetition its tax lien in the Dallas County real property records.

*Findings Regarding Plaintiff's Liability as a Responsible Person*

6. Plaintiff was assessed for the unpaid trust fund taxes of Lewis Manufacturing, Inc. ("Lewis") for the last quarter of 1991 and the second and third quarters of 1992.

7. Plaintiff and his one witness, David Caruth, were business partners in a company named Johnson and Caruth.

8. During the time periods in question, Johnson and Caruth was paid management consulting fees by Lewis.

9. Plaintiff was chairman of the board of directors of Lewis for the entire time period at issue.

10. The entire board of directors only comprised three or four members, including plaintiff.

11. Plaintiff had authority to sign checks for both bank accounts maintained by Lewis.

12. Plaintiff knew that Lewis had a continuous cash flow problem.

13. Plaintiff knew at the time he got involved in Lewis that it was already experiencing financial problems.

14. Plaintiff knew that during the entire period of time he was involved with Lewis that it had dire financial problems.

15. Plaintiff was the sole person authorized to sign checks on a checking account he maintained in Dallas on behalf of Lewis.

16. The Lewis bank account in Dallas used plaintiff's law firm address as its mailing address.

17. Plaintiff was the sole person authorized to make withdrawals or deposits for a Lewis bank account maintained in Ennis.

18. Plaintiff made deposits into this bank account for Lewis.

---

**1.** References to plaintiff refer solely to plaintiff Russell Johnson.

19. Plaintiff would send money to the Lewis plant in Ennis, Texas for the payment of bills.

20. Plaintiff personally delivered checks to at least one of Lewis's creditors.

21. Plaintiff signed checks on behalf of Lewis.

22. Plaintiff signed checks payable to his consulting firm, Johnson and Caruth, from the Lewis bank account in Dallas.

23. Plaintiff signed at least one check payable to himself from the Lewis bank account in Dallas.

24. Every check introduced at the trial was signed by the plaintiff.

25. Plaintiff signed payroll checks for Lewis after he had closed the business.

26. Plaintiff became president of Lewis in February, 1992, and remained president until he closed Lewis.

27. Plaintiff fired at least one employee of Lewis before becoming the president.

28. Plaintiff closed the business and fired all the employees of Lewis.

29. Plaintiff and David Caruth interviewed and hired the general manager for Lewis, Mr. Jack Woodworth, Jr.

30. Plaintiff and David Caruth hired the person who preceded plaintiff as president of Lewis, Mr. Howard Lewis.

31. Plaintiff and David Caruth were given and maintained the financial statements for Lewis. Plaintiff and David Caruth made all major decisions and authorized all payments for Lewis.

32. Plaintiff was the person Mr. Woodworth notified when he subsequently resigned.

33. Plaintiff had access to the corporate records through a computer in his Dallas office and would have been shown the business records if he asked to see them.

34. Plaintiff knew after his first meeting in March or April, 1991, with Mr. Howard Lewis that Lewis Manufacturing had unpaid payroll taxes.

35. Other than a few months, for the entire period of time plaintiff was involved with Lewis it was in "dire cash flow distress and needing (sic) continuous infusions of money to keep the doors open."

36. Mr. Woodworth frequently discussed the unpaid payroll taxes with plaintiff.

37. Mr. Woodworth's testimony was credible.

38. Plaintiff and Mr. Caruth directed and authorized payments of bills for Lewis.

39. Plaintiff and Mr. Caruth could negotiate large corporate purchases, contracts and loans for Lewis.

40. Plaintiff and Mr. Caruth could determine Lewis' company financial policy.

41. Plaintiff signed at least one payroll tax return (Form 941) for Lewis. This was the return for the second quarter of 1992, ending June 30, 1992.

42. Plaintiff had the authority to prepare, review and sign payroll tax returns for Lewis during all the periods at issue.

43. Plaintiff had authority to enter into contracts on behalf of Lewis for, at a minimum, the time period he was president.

44. Plaintiff was the sole person to sign a promissory note dated August 5, 1991, on behalf of Lewis.

45. Prior to becoming the president of Lewis, plaintiff, as chairman of the board, gave permission to the then president to proceed with a contract submission.

46. Plaintiff had authority to purchase assets on behalf of Lewis for, at a minimum, the time period he was president.

47. Plaintiff claimed that in his role as board chairman of Lewis he ordered that the payroll taxes be paid but admitted that he never did anything to verify that they were being paid.

48. Plaintiff did not call as witnesses any of the people he claimed to have ordered to pay the taxes.

49. Although the plaintiff claimed during discovery that the corporate documents of Lewis would prove his "limited involvement", he did not turn over any such documents to the United States, did not bring any to trial and did not offer a single exhibit into evidence at the trial.

50. Plaintiff was a responsible person of Lewis pursuant to 26 U.S.C. § 6672 for the fourth quarter of 1991 and the second and third quarters of 1992.

51. Plaintiff acted willfully pursuant to 26 U.S.C. § 6672 for the fourth quarter of 1991 and the second and third quarters of 1992.

*Findings Regarding Plaintiff's Willful Attempts to Evade or Defeat the Payment of His Taxes*

52. Plaintiff has been an attorney since 1972.

53. Plaintiff described himself as a "wills and trusts" attorney and testified he knew estate tax law.

54. Plaintiff is self employed and is aware of the need to pay self employment tax and to make quarterly estimated tax payments.

55. He is well aware of the filing requirements and due dates for income tax returns.

56. Plaintiff and his then wife, Lisa Johnson, did not timely file their 1988—1992 or 1994 income tax returns.

57. Plaintiff testified that prior to 1989, he always timely filed and paid his income taxes. However, contrary to plaintiff's testimony, his 1988 income tax return was filed late and the taxes were paid late.

58. Plaintiff did not offer any evidence as to why any tax return other than 1989 was not timely filed.

59. Plaintiff and his then wife, Lisa Johnson, did not file their 1989 income tax return until October 22, 1993.

60. The amount of taxes due on plaintiff's income tax returns are amounts he admitted were due, they are not based on any adjustments made by the IRS.

61. On his 1989 income tax return, plaintiff reported tax due of $17,038.00. He did not pay any of this amount.

62. Plaintiff and his then wife, Lisa Johnson, did not file their 1990 income tax return until May 19, 1994.

63. On his 1990 income tax return, plaintiff reported tax due of $27,230.00. He did not pay any of this amount.

64. Plaintiff and his then wife, Lisa Johnson, did not file their 1991 income tax return until June 7, 1994.

65. On his 1991 income tax return, plaintiff reported tax due of $17,422.00. He did not pay any of this amount.

66. Plaintiff and his then wife, Lisa Johnson, did not file their 1992 income tax return until June 22, 1994.

67. On his 1992 income tax return, plaintiff reported tax due of $10,597.00. He did not pay any of this amount.

68. On his 1993 income tax return, plaintiff reported tax due of $21,307.00. He did not pay any of this amount.

69. Plaintiff and his then wife, Lisa Johnson, did not file their 1994 income tax return until January 31, 1997.

70. On his 1994 income tax return, plaintiff reported tax due of $17,553.00. He did not pay any of this amount.

71. Plaintiffs have not timely filed or paid their taxes for the years since 1994.

72. Plaintiff admits he owes the taxes at issue and claims that he wants to pay them.

73. On their bankruptcy schedules, plaintiffs valued their home as being worth $650,000.00.

74. Plaintiffs' monthly mortgage payment is approximately $4,000 and they are current on their mortgage payments.

75. Plaintiffs make the utility payments for their home.

76. On his 1989 income tax return, while no income taxes were paid, plaintiff did deduct $45,130.00 of itemized deductions, including mortgage interest of $35,129.00.

77. On his 1990 income tax return, while no income taxes were paid, plaintiff did deduct $48,056.00 of itemized deductions, including mortgage interest of $35,888.00.

78. On his 1991 income tax return, while no income taxes were paid, plaintiff did deduct $67,687.00 of itemized deductions, including mortgage interest of $43,066.00.

79. Plaintiff and his then wife, Lisa Johnson, did not file their 1989—1992 income tax returns until after being contacted about them by the IRS during October, 1993.

80. During the years when Russell Johnson was either not filing or not paying and filing his income tax returns, he had substantial income with which to pay his tax debts.

81. Plaintiff, Russell Johnson, voluntarily chose to pay other expenses instead of his tax debts.

82. Any finding of fact which is more properly deemed to be a conclusion of law is to be considered a conclusion of law.

### Conclusions of Law

*Conclusions Regarding Plaintiff's Liability as a Responsible Person*

1. 26 U.S.C. §§ 3102(a) and 3402(a) require employers to withhold the employee's share of federal social security taxes and income taxes from the wages of their employees. The money withheld from each employee's wages is then held by the employer in trust ("trust fund monies") for the benefit of the United States as provided for by 26 U.S.C. § 7501(a). *Slodov v. United States,* 436 U.S. 238, 242–43, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978).

2. Employers are then required to pay over the withheld taxes to the United States. *Wood v. United States,* 808 F.2d 411, 414 (5th Cir.1987). These funds do **not** belong to the employer and are not to be used by the business. If an employer withholds these taxes but fails to pay them over to the United States, the employee is nevertheless given full credit for having paid the taxes, and the Government may not require any additional payment from the employee. Thus, **unless the Government can collect these taxes from the employer or the persons responsible for the collection and nonpayment of the taxes, the revenues are forever lost to the Government.** *Slodov,* 436 U.S. at 243–45, 98 S.Ct. 1778; *Mazo v. United States,* 591 F.2d 1151, 1153 (5th Cir.), *cert. denied sub nom., Lattimore v. United States,* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

3. To protect against such revenue losses, § 6672(a) was enacted by Congress. 26 U.S.C. § 6672 reads, in pertinent part:

(a) GENERAL RULE.—Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and

pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over....

26 U.S.C. § 6671(b) defines a person as follows:

The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

The Supreme Court in *Slodov*, when interpreting § 6672 held that:

We conclude therefore that the phrase "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title" was meant to limit § 6672 to persons responsible for collection of third-party taxes and **not to limit it to those persons in a position to perform all three of the enumerated** *duties with respect to the tax dollars in question.* *(Emphasis added.)*

*Slodov,* 436 U.S. at 250, 98 S.Ct. 1778.

■ 4. A responsible person is any person who *performs* **any** *of the three functions specified in the statute.* *Barnett v. Internal Revenue Service,* 988 F.2d 1449, 1453 n. 6 (5th Cir.1993).

5. Though § 6672 is phrased in terms of a "penalty," the penalty may be more accurately described as a mechanism for shifting part of the tax liability of a defaulting corporation to those responsible for nonpayment. *Newsome v. United States,* 431 F.2d 742, 745 (5th Cir.1970).

■ 6. There are two elements to liability under § 6672. The first is that a person upon whom liability is to be imposed must be a person required to collect, truthfully account for, or pay over any tax, commonly referred to as a "responsible person." The second requirement under § 6672 is that such responsible person willfully failed to collect, truthfully account for or pay over such taxes. *Wood,* 808 F.2d at 414; *Howard v. United States,* 711 F.2d 729, 733 (5th Cir.1983).

■ 7. Responsibility for purposes of § 6672 is a matter of status, duty, power and authority, whether exercised or not. *Wood,* 808 F.2d at 415; *Howard,* 711 F.2d at 734.

■ 8. It is not necessary that an individual have the final word as to which creditors should be paid in order to be subject to liability under § 6672. Rather, it is sufficient that the person have **some** power, authority, and control over the process by which corporate funds are disbursed to find that he is a "responsible person" under § 6672. *Neckles v. United States,* 579 F.2d 938 (5th Cir.1978).

9. The Fifth Circuit generally takes a broad view of who is a responsible person. *Barnett,* 988 F.2d at 1454; *Gustin v. United States,* 876 F.2d 485, 491 (5th Cir.1989); *Wood,* 808 F.2d at 415.

■ 10. The crucial inquiry is whether the individual had the effective power to pay the taxes. *Barnett,* 988 F.2d at 1454; *Howard,* 711 F.2d at 734.

■■ 11. Responsible person status is not limited to people who perform the mechanical jobs of collection and payment of corporate funds. The Fifth Circuit, like other circuits, looks at a number of circumstantial indicia of responsible person status when a party lacks the precise responsibility of withholding or paying employees' taxes. In *Barnett,* the Court noted the fact that this circuit takes a broad view of who is a responsible person and stated:

... we cannot ignore the extensive case law that narrowly constrains a fact-finder's province in § 6672 cases. [Footnote omitted.] Thus, although "the facts... are critical in... any § 6672 cases," *Commonwealth National Bank of Dallas v. United States,* 665 F.2d at 752, we tend to agree with the other circuits that have held that certain facts will almost invariably prove dispositive of responsibility.

*Barnett,* 988 F.2d at 1454. Recognized indicia of responsible person status include the following [2]:

(1) the holding of corporate office, *Ralph Brown v. United States,* 591 F.2d 1136, 1138, 1139 (5th Cir.1979);

(2) the ownership of stock, *Ralph Brown,* 591 F.2d at 1138;

(3) the authority to sign corporate checks, either alone or jointly with another officer, *Alton Brown v. United States,* 464 F.2d 590, 591 (5th Cir.1972), *cert. denied,* 410 U.S. 908, 93 S.Ct. 962, 35 L.Ed.2d 270 (1973);

(4) the authority to obtain financing or loans for the corporation, *Liddon v. United States,* 448 F.2d 509, 511 (5th Cir.1971), *cert. denied* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972);

(5) the authority to execute corporate loans for the corporation, *Moore v. United States,* 465 F.2d 514, 517 (5th Cir.1972), *cert. denied,* 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1973); *Liddon,* 448 F.2d at 511;

(6) personally guaranteeing the debts of the corporation, *Liddon,* 448 F.2d at 511; *Ralph Brown,* 591 F.2d at 1139;

(7) the authority to negotiate contracts for the corporation, *Gefen v. United States,* 400 F.2d 476 (5th Cir.1968), *cert. denied,* 393 U.S. 1119, 89 S.Ct. 990, 22 L.Ed.2d 123 (1969), *reh. denied,* 394 U.S. 967, 89 S.Ct. 1302, 22 L.Ed.2d 569 (1969);

(8) the authority to hire and fire employees, *Howard,* 711 F.2d at 731;

(9) the holding of a position as a member of the board of directors, *Hewitt v. United States,* 377 F.2d 921, 923 (5th Cir.1967); *Liddon,* 448 F.2d at 511;

(10) the effective power to decide what creditors are to be paid, *Neckles,* 579 F.2d at 940; *Howard,* 711 F.2d at 734; and

(11) the authority to purchase corporate assets, *Liddon,* 448 F.2d at 511.

■ 12. While the *Barnett* court lists and discusses six indicia of responsibility, it is crucial to note that neither any particular indicia nor any particular combination of indicia is required for a finding of responsibility. As the Fifth Circuit has stated, it "cannot allow [an individual] to disqualify himself from responsible person status simply because he does not fit into every category [it has] ever listed." *Raba v. United States,* 977 F.2d 941, 944 (5th Cir.1992).

■ 13. Fifth Circuit cases have held the following:

(1) There is no requirement that a responsible person be a corporate officer. *Neckles v. United States,* 579 F.2d at 938.

(2) There is no requirement that a responsible person have access or control over books and financial records. *Gustin v. United States,* 876 F.2d at 487.

---

**2.** The cited cases are examples of cases where these factors were considered; however, the citations are not intended to be all inclusive. *Barnett,* 988 F.2d at 1455, refers to Annotation, 84 A.L.R. Fed. 170, 1987 WL 419561 at § 10–20 for a collection of cases discussing the various factors.

(3) There is no requirement that a responsible person be an authorized check signer. *Raba v. United States*, 977 F.2d at 943.

(4) There is no requirement that a responsible person be a member of the board of directors. *Mazo v. United States*, 591 F.2d at 1151.

(5) There is no requirement that a responsible person be a stockholder. *Gustin v. United States*, 876 F.2d at 487.

(6) The hope that sufficient money will be available later to pay the taxes is not a defense. In *Newsome v. United States*, 431 F.2d at 746, the Court held:

The responsible officer's actions before the due date for payment of the withheld taxes satisfies the "willfulness" requirement under section 6672: when the responsible officer (as defined by section 6671(b)) knows that the withheld funds are being used for other corporate purposes, regardless of his expectation that sufficient funds will be on hand on the due date for payment over to the government.

(7) It is not stealing for an authorized check signer to pay taxes to the Internal Revenue Service. *Gustin v. United States*, 876 F.2d 485 (5th Cir.1989), states:

One does not cease to be a responsible person merely by delegating that responsibility to others, nor do instructions from a superior not to pay the taxes or the threat of being fired if one pays the taxes make one not a responsible person under the statute. *Id.* We do not mean to suggest, however, that mere access to corporate funds makes one a responsible person under the statute. Employees of a corporation are agents, and a corporation may deny to an agent the actual authority to pay taxes. Requiring an employee to pay over taxes when he does not have the actual authority to do so would be tantamount to requiring any employee with mere access to company funds to steal funds that the company owes the government. Section 6672 does not impose such a responsibility upon any corporate employee, but the law does impose a duty on the employees not to dissipate the trust by paying other creditors with money owed to the government.

*Gustin v. United States*, 876 F.2d at 491–2.

14. A company cannot make the Internal Revenue Service an unwilling joint venturer by not paying currently owed taxes in the hope things will improve in the future. *Mazo v. United States*, 591 F.2d at 1154.

15. There is no requirement that an individual must possess final decision making authority to be a responsible person. In *Neckles*, Mr. Neckles was *not an officer* and did not receive any remuneration from the company. Two of the three corporate bank accounts required two signatures on all checks. It was held that:

Although the appellant may not always have had the "final" say about paying creditors, in the apocalyptic sense of the word, he did have significant control over disbursements. This is sufficient for section 6672 liability to attach.

*Neckles*, 579 F.2d at 940.

16. There is no requirement that an individual run the day-to-day corporate operations to be a responsible person. *Mazo v. United States*, 591 F.2d 1151 (5th Cir.), *cert. denied sub nom., Lattimore v. United States*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979).

17. Plaintiff was clearly a responsible person under § 6672.

18. Liability attaches to a "responsible person" under § 6672 only upon his "willful" failure to collect or account for

and pay over the employment taxes. The Fifth Circuit has reaffirmed its basic knowledge standard of "willfulness" originally set forth in *Mazo:*

> Willfulness under § 6672 requires only a voluntary, conscious, and intentional act, not a bad motive or evil intent. *Willfulness is normally proved by evidence that the responsible person paid other creditors with knowledge that withholding taxes were due at the time to the United States.* "A considered decision not to fulfill one's obligation to pay the taxes owed, evidenced by payments made to other creditors in the knowledge that the taxes are due, is all that is required to establish willfulness." (Emphasis added, citations omitted.)

*Barnett,* 988 F.2d at 1457.

19. The Fifth Circuit recognizes that in the case of individuals who are responsible persons both before and after a withholding tax liability accrues there is a duty to use all available unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation. Failure to do so when there is knowledge of the liability constitutes willfulness. *Mazo,* 591 F.2d at 1157. This is true even if the responsible person did not learn about the liability until the trust funds have already been dissipated. *Logal v. United States,* 195 F.3d 229 (5th Cir. 1999).

20. Plaintiff, a responsible person, acted with reckless disregard, ignored Lewis' dire financial situation and/or impermissibly attempted to delegate the functions of ensuring that the payroll taxes were timely paid to the Government. Plaintiff continued to be a responsible person of Lewis until he shut it down. Plaintiff, by his own admission, did nothing to guarantee that the taxes got paid. Therefore, he acted willfully for all quarters at issue.

21. Plaintiff continued to write checks to creditors other than the IRS after he knew, or at a bare minimum should have known, of the unpaid payroll taxes. Evidence that a responsible person had actual knowledge of payments to other creditors after he was aware of the failure to pay withholding tax is sufficient for summary judgment on the issue of willfulness. *Mazo,* 591 F.2d at 1157.

The *Mazo* court also stated:

> In the case of individuals who are responsible persons both before and after withholding tax liability accrues, as the appellants were in this case, there is a duty to use unencumbered funds acquired after the withholding obligation becomes payable to satisfy that obligation; failure to do so when there is knowledge of the liability, as was the case here, constitutes willfulness.

*Mazo,* 591 F.2d at 1157.

22. Further, in *Wood,* Mr. Wood was also a responsible person for all quarters involved. Mr. Wood found out about the unpaid employment taxes on September 17, 1979. Mr. Wood continued to sign payroll checks after learning of the unpaid taxes. The government sought to hold Mr. Wood liable for, among other quarters, the unpaid taxes for the second quarter of 1979, which ended on June 30, 1979, prior to his knowledge of the unpaid taxes. In addressing Wood's liability for the second quarter of 1979, the Court held:

> Wood received notice that employment taxes were past due by a letter from the IRS dated September 17, 1979. He concedes that after that date he signed checks paying to creditors more than the amount of unpaid withholding taxes. Thus, he acted willfully as to *all taxes unpaid before he received notice that*

*second quarter employment taxes were past due.*

*Wood,* 808 F.2d at 412 (emphasis added).

23. The Fifth Circuit again reaffirmed its position on this issue as recently as 1999 in *Logal v. United States,* 195 F.3d 229 (5th Cir.1999).

*Conclusions Regarding Plaintiff's Willful Attempts to Evade or Defeat the Payment of His Taxes*

24. As a general rule, all debts arising prior to the filing of the bankruptcy petition will be discharged. *E.g., Matter of Bruner,* 55 F.3d 195, 197 (5th Cir. 1995). However, Congress intended that the fresh start provided by the bankruptcy discharge would apply only to the honest but unfortunate debtor. *Matter of Birkenstock,* 87 F.3d 947, 950 (7th Cir.1996); *see also Grogan v. Garner,* 498 U.S. 279, 286–287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Bruner,* 55 F.3d at 200. Accordingly, with respect to a Chapter 7 bankruptcy, certain liabilities have been excepted from discharge by the provisions of 11 U.S.C. §§ 523 & 727.

25. The burden of proving that a tax liability is excepted from discharge is on the Government. *E.g., In re Fegeley,* 118 F.3d 979, 983 (3rd Cir.1997).

26. Section 523(a)(1)(C) of the Bankruptcy Code (11 U.S.C.) provides, in pertinent part, that:

§ 523. **Exceptions to discharge**

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(1) for a tax or a customs duty—

\*     \*     \*     \*     \*     \*

(C) with respect to which debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax.

27. In order to determine whether a debtor's tax liability is excepted from discharge under § 523(a)(1)(C) courts have looked at two elements: 1) a conduct element, i.e., whether the debtor attempted to evade or defeat the tax and 2) a *mens rea* element, i.e., whether such actions were willful. *Fegeley,* 118 F.3d at 983–984; *In re Tudisco,* 183 F.3d 133, 136 (2nd Cir. 1999).

28. With respect to the conduct element, acts of either commission or culpable omission satisfy such element. *Fegeley,* 118 F.3d at 983; *see also Bruner,* 55 F.3d at 200; *contra In re Haas,* 48 F.3d 1153 (11th Cir.1995)(only attempts to evade or defeat the assessment of taxes are covered by Section 523(a)(1)(C))[3]. While mere failure to pay a tax liability is insufficient to satisfy the conduct element, *Fegeley,* 118 F.3d at 983; *Birkenstock,* 87 F.3d at 951; *Dalton v. Internal Revenue Service,* 77 F.3d 1297, 1301 (10th Cir.1996), where the debtor both has a pattern of failing to file his tax returns and fails to pay the tax, despite the financial ability to do so, such omissions are sufficient to satisfy the conduct element, *Fegeley,* 118 F.3d at 984; *Birkenstock,* 87 F.3d at 951; *In re Toti,* 24 F.3d 806, 809 (6th Cir.1994), *cert. denied,* 513 U.S. 987, 115 S.Ct. 482, 130 L.Ed.2d 395 (1994). Certainly, a debtor may also satisfy the conduct element by taking affirmative actions which show that he intended to evade or defeat the tax liability. *Birkenstock,* 87 F.3d at 951–952; *see also Dalton,* 77 F.3d 1297 (concealment

---

**3.** The *Haas* decision was specifically rejected by the Fifth Circuit in *Bruner,* 55 F.3d at 200. Additionally, a later panel of the 11th Circuit questioned the rationale of the *Haas* decision and suggested that the issue should be reconsidered en banc. *In re Griffith,* 174 F.3d 1222 (11th Cir.1999). The Government filed a motion for rehearing en banc in *Griffith,* which has been granted. 182 F.3d 1297 (11th Cir. 1999).

of assets); *Matter of Zuhone*, 88 F.3d 469 (7th Cir.1996) (transfer of assets). Furthermore, a debtor clearly satisfies the conduct element by a combination of omissions and commissions. *Bruner*, 55 F.3d at 200 (failure to pay, pattern of failure to file, and concealment of income and assets)[4]; *Tudisco*, 183 F.3d at 137 (failure to pay, pattern of failure to file, and false affidavit to employer).

29. The *mens rea* element is determined by the civil willfulness standard. *E.g., Fegeley*, 118 F.3d at 984. Such standard simply requires that the actions to evade or defeat the tax liability be "voluntary, conscious, and intentional." *Id.; Birkenstock*, 87 F.3d at 952; *Dalton*, 77 F.3d at 1302; *Tudisco*, 183 F.3d at 137; *see also Toti*, 24 F.3d at 809; *cf. Matter of Bruner*, 55 F.3d at 199 (follows *Toti*). In determining whether the debtor's actions were willful, the Courts have employed a three-pronged test of whether, in the case of a debtor who is financially able to pay his taxes but chooses not to do so, (1) the debtor had a duty under the law, (2) the debtor knew he had that duty, and (3) the debtor voluntarily and intentionally violated that duty.[5] *Fegeley*, 118 F.3d at 984; *Birkenstock*, 87 F.3d at 952; *see Matter of Bruner*, 55 F.3d at 197.

30. Plaintiff admitted he had a duty, which he knew of, to file income tax returns and pay taxes for the years at issue. As such, his failure to file his income tax returns and pay the taxes for the years at issue was clearly voluntary and intentional, as well as an obvious attempt to evade or defeat the payment of his taxes. *Toti*, 24 F.3d at 809; *see Fegeley*, 118 F.3d at 984; *Matter of Bruner*, 55 F.3d at 198.

31. Plaintiff clearly satisfied the conduct element and the mens rea element of Section 523(a)(1)(C) of the Bankruptcy Code. He, therefore, willfully attempted to evade or defeat his income tax liabilities for the years at issue. Accordingly, such liabilities are excepted from discharge in this Chapter 7 bankruptcy pursuant to the provisions of 11 U.S.C. § 523(a)(1)(C).

32. Plaintiff's trust fund liability is also not discharged in this case pursuant to 11 U.S.C. § 523(a)(1)(A) and § 507(a)(8)(C).

33. Any conclusion of law which is more properly deemed to be a finding of fact is to be considered a finding of fact.

---

4. In *Bruner* the Fifth Circuit, after stating that 11 U.S.C. § 523(a)(1)(C) "surely encompasses both acts of commission as well as culpable omissions," noted that it did not even have to address the taxpayers arguments that an affirmative act was required because the taxpayers had committed affirmative acts. *Bruner*, 55 F.3d at 200.

5. The term "willfully" as used in 26 U.S.C. § 7203 (criminal failure to file) requires that the accused acted intentionally in violation of a known legal duty. *United States v. Burton*, 737 F.2d 439, 441 (5th Cir.1984).