**In re Donald WIGLEY and Faye Marie Wigley, Debtors.**

**No. 01–80890–BJH–13.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Oct. 24, 2005.

## MEMORANDUM OPINION AND ORDER ON MOTION TO DISMISS

BARBARA J. HOUSER, Bankruptcy Judge.

Before the Court is the Motion to Dismiss with Prejudice (the "Motion") filed by the Internal Revenue Service (the "IRS") in the Chapter 13 case (the "Case") of Donald and Faye Wigley (the "Debtors"). The Debtors oppose the dismissal of the Case.

A hearing was held on the Motion on August 30 and 31, 2005. At the conclusion of the hearing, a briefing schedule was agreed to by the parties. Pursuant to that schedule, the final brief was filed on September 6, 2005, at which time the Court took the Motion under advisement. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

### I. Contentions of the Parties

In the Motion, the IRS asks that the Case be dismissed with prejudice and an injunction be issued precluding the Debtors from filing another bankruptcy case for a period of one year. The IRS alleges, *inter alia,* that the Debtors circumvented this Court's Agreed Order Resolving Debtors' Corrected Motion for Sanctions (the "Agreed Order") by failing to pay the employment trust fund taxes owed by the Debtors' corporation, FQS, Inc. ("FQS").[1] The IRS alleges that Faye Wigley's assessment as a "responsible person" personally liable for employee trust fund taxes owed by Conventional Stucco Systems, Inc. ("CSS"), a corporation formed by the Debtors' 19-year-old son at or about the

Timothy W. Sorenson, Dallas, TX, for Debtors.

---

1. FQS, Inc., conducted business under the     name of First Quality Stucco.

time that FQS ceased its business operations, and her subsequent failure to make full payment of these postpetition taxes, evidences bad faith both as an effort to avoid complying with the terms of the Agreed Order and as an accrual of postpetition taxes on the Debtors' part, thereby warranting dismissal of the Case.

The Debtors oppose the Motion, contending that they have prosecuted the Case in good faith and have made all payments to the Chapter 13 trustee required to date under the plan of reorganization confirmed in the Case (the "Plan"). The Debtors further contend that they intend to complete their Plan payments, entitling them to a discharge of all prepetition debts in accordance with § 1328 of the Bankruptcy Code. Regarding the trust fund taxes owed by CSS, the Debtors deny that Faye Wigley is a responsible person who is liable for the payment of those taxes. Accordingly, the Debtors deny that they have incurred liability for postpetition taxes to the IRS.

## II. Factual Background

### A. The Operations of FQS

The Debtors filed the Case on December 26, 2001. Prior to their bankruptcy filing, and as noted on the Debtors' statement of financial affairs, the Debtors operated a small stucco business out of their home at 8218 San Cristobal Drive in Dallas, Texas for about 30 years. Gov't Exh. 2 at 20. Although the name of the entity through which the stucco business operated changed several times over those 30 years,[2] one of the entities at issue here, FQS, was incorporated on April 16, 1997. Gov't Exh. 11 at 1. Donald Wigley was the President of FQS and Faye Wigley was its Secretary and Treasurer. *Id.* at 2. Faye Wigley's duties included keeping the books and records of FQS. The Debtors testified that FQS ceased its business operations in December 2001, shortly before the Case was filed.

During it business operations, FQS failed to pay its employee trust fund taxes to the IRS. The Debtors scheduled their "responsible person" liability for these trust fund taxes for the second, third, and fourth quarters of 2001 in the amount of $70,013.62 on Schedule E of their bankruptcy schedules, thereby admitting their liability for these taxes as a priority unsecured claim in the Case.[3] Gov't Exh. 2 at 9.

Although the IRS was given notice of the Case, it never filed a proof of claim for the trust fund taxes owed by the Debtors as responsible persons for FQS. Because the IRS failed to file a claim in the Case, the Debtors' counsel filed a claim on behalf of the IRS in the amount of $70,013.62. Gov't Exh. 20. Because the claim was filed after the governmental bar date in

---

2. Faye Wigley testified that the stucco business was known, at different times, as Donald Wigley Plastering Company, First Quality Stucco, and V & W Stucco, Inc.

3. According to the IRS, FQS owed trust fund taxes for the second, third, and fourth quarters of 2001, as well as the first quarter of 2002. Gov't Exh. 8 at 2, 5. However, the undisputed record at the hearing on the Motion was that FQS ceased operations in December 2001. Accordingly, the Court concludes that the Debtors were not properly assessed for trust fund taxes allegedly owed by FQS in 2002. If FQS was not operating in 2002, it could not owe employee trust fund taxes to the IRS and the Debtors, as its officers, could not be responsible either. Thus, the FQS taxes at issue here are prepetition taxes. *See Newsome v. United States*, 431 F.2d 742, 746 (5th Cir.1970) (noting that the duty giving rise to liability under § 6672(a) "arises when the federal income and social security taxes are withheld from employees' wages and ends when such funds are paid over to the United States").

the Case, the Debtors' counsel denoted the claim as "late-filed."

At various times after the filing of the Case, the IRS attempted to collect the trust fund taxes owed by FQS. Gov't Exh. 4 at 2–10.[4] In response to the actions of the IRS, the Debtors filed a Corrected Motion for Sanctions on July 19, 2002, seeking damages for the IRS' alleged violation of the automatic stay through these collection efforts. Prior to a hearing on the sanctions motion, the Debtors and the IRS submitted the Agreed Order, providing, *inter alia,* as follows:

> IT IS FURTHER ORDERED that the Debtors shall be allowed to pay the 2001 and 2002 federal employment (941) tax assessed against FQS, Inc./First Quality Stucco Co. ("FQS")(Employer Identification No. 75–2703591) through their Chapter 13 plan in this case, and agree that the United States (Internal Revenue Service) may assess this tax against them personally.

Gov't Exh. 13 at 1 (footnotes omitted). The Court entered the Agreed Order on August 23, 2002. On October 15, 2002, the IRS assessed both Donald and Faye Wigley, individually, as persons responsible for the payment of FQS' trust fund tax liability. Gov't Exh. 8 at 2, 5.

At the hearing on the Motion, the Debtors testified that the purpose behind the Agreed Order was to insure that their liability for FQS' trust fund taxes was paid in the Case. However, despite the Debtors' understanding that these trust fund taxes were to be paid in full in the Case, the Debtors filed their Plan proposing to treat the IRS' late-filed unsecured claim, otherwise entitled to priority, in a separate class entitled to payment only *after* any timely filed claims of general unsecured creditors were paid in full. Wigley Exh. 12 at 4.[5] Based on this Plan treatment, the IRS would receive far less than a one hundred per cent payout of its priority unsecured claim.

The IRS received notice of the hearing on confirmation of the Plan and its treatment as a late-filed claimant in the Case. Ct. Dkt. Doc. 32 at 2. Once again, the IRS did nothing. It failed to object to confirmation of the Plan or otherwise appear at the hearing on confirmation. No other objections to confirmation were asserted, and the Plan was confirmed on January 30, 2003. To date, the Debtors have made all payments due under the Plan. In fact, general unsecured creditors have been paid in full. Once unsecured creditors were paid, the Chapter 13 trustee began making payments on the late-filed IRS claim, as the Plan provides. That is when the instant dispute arose.

Although the IRS did not receive any payments from the Debtors for two-and-one-half years following confirmation of

4. The IRS communicated with the Debtors at least seven times after the filing of the Case, including January 28, April 9, April 15, April 29, June 19, July 16, and July 29, 2002.

5. Section N of the Plan provides as follows:
   **N. Late Filed Claims and Claims Not Filed**
   Late filed claims on pre-petition debt shall be paid pro rata, but only after all other timely filed claims are paid in full. Such payment shall be before any payment on pre-petition non-pecuniary penalties. Late filed claims on priority pre-petition claims shall be paid in full before any payment on late filed general unsecured pre-petition claims.
   Wigley Exh. 12 at 4. Though the admitted exhibit is somewhat difficult to read, a more legible version of the Plan is located at Court Docket Document 32, pages 3–6.
   The Court hereby takes judicial notice of its docket in this case. *Sec. & Exch. Comm'n v. First Fin. Group of Tex.,* 645 F.2d 429, 433 n. 6 (5th Cir.1981) (noting that "a court may take judicial notice of its own records").

the Plan, the IRS did nothing. Moreover, notwithstanding its current argument that the Agreed Order *required* the Debtors to pay the trust fund taxes owed by FQS, the IRS apparently failed to realize that no payments were being made to it for nearly three years from the entry of the Agreed Order. Now, after Plan payments to the IRS have finally commenced, the IRS seeks dismissal of the Case because of the Debtors' alleged bad faith in dealing with the IRS in the Case. Although the IRS argues otherwise, the plain language of the Agreed Order does not *require* the Debtors to pay their liability for FQS' trust fund taxes in the Case. Rather, the Agreed Order is permissive—it *allows* the IRS to assess the Debtors for FQS' trust fund taxes and it *allows* the Debtors to pay their liability for FQS' trust fund taxes in the Case.[6]

## B. The Operations of CSS

On November 12, 2001, shortly before the Case was filed, the Debtors' 19-year-old son, Zachary Wigley ("Zach"), incorporated his own stucco business, CSS. Gov't Exh. 12 at 1. CSS operated out of the same address as had FQS—i.e., the Debtors' home at 8218 San Cristobal Drive in Dallas, Texas. *Id.* Zach was named President of CSS, and there were no other officers or directors listed on the incorporation documents. *Id.* at 1–2. However, Zach hired both his mother and father as employees of CSS as well as at least one other former officer of FQS, Ezequiel Perez. Zach also obtained from his parents some, if not all, of the equipment that FQS had used in its business operations for CSS' use.

CSS soon experienced its own problems with the IRS. Just like FQS had, CSS failed to pay its trust fund taxes. Then, just like his parents had, Zach filed his own Chapter 13 bankruptcy case on January 29, 2004. Gov't Exh. 22 at 1. According to Zach's testimony, he filed Chapter 13 to be able to pay his "responsible person" liability for the trust fund taxes owed by CSS over time under a Chapter 13 plan. Again, just like his parents had, Zach shut down CSS' business operations shortly before his bankruptcy filing. Zach then formed yet another company, State Line Stucco, L.L.C. ("State Line"), Gov't Exh. 25 at 5, through which he began doing the same type of stucco work as had CSS and FQS before it.[7]

Zach scheduled a claim in the amount of $80,000.00 for the trust fund taxes owed to the IRS from CSS' operations on Schedule E in his bankruptcy case. Gov't Exh. 24 at 10. However, Zach did not fully answer all of the questions on his statement of financial affairs—specifically, Zach failed to include either the taxpayer identification number for, or the dates of operation of, CSS. Gov't Exh. 25 at 5. Although the IRS received notice of Zach's bankruptcy filing,

---

**6.** At the hearing on the Motion, the IRS argued passionately that the Debtors failed to abide by the terms of the Agreed Order. When challenged on this contention given the language of the Agreed Order, the IRS argued that the Debtors failed to abide by the "spirit" of the Agreed Order. Whatever the Debtors' intent in entering into the agreement, if the IRS truly believed that the Debtors were agreeing to fully pay their liability for FQS' trust fund taxes through the Plan in the Agreed Order, which then freed the IRS from any other responsibilities in the Case—*i.e.,*

filing a proof a claim and making sure that the Plan properly provided for the IRS' claim, the IRS' endorsement of the language of the Agreed Order was imprudent at best. The Agreed Order cannot be read as *requiring* the Debtors to pay the trust fund tax liabilities in the Case or under the Plan.

**7.** Sadly, the Wigley pattern of tax abuse has begun again: State Line has not paid its employee trust fund taxes to the IRS either.

it filed no proof of claim in Zach's case.[8] However, unlike his parents, Zach did not file a proof of claim on behalf of the IRS. Gov't Exh. 27 at 1. So, while Zach initially proposed a 48–month plan of reorganization, he received a Chapter 13 discharge on June 1, 2005, less than 18 months after his bankruptcy filing, because all filed claims in his case were paid. Gov't Exh. 29 at 1–2. The IRS received nothing under Zach's Chapter 13 plan. *Id.* at 3.

Having failed to recover the trust fund taxes from CSS, the IRS assessed both Zach and Faye Wigley with a trust fund tax penalty of $65,021.08 in 2005, as persons responsible for the payment of CSS' trust fund taxes. Gov't Exh. 9 at 2–5. According to the IRS' trust fund recovery penalty file, Faye Wigley was assessed for CSS' tax liability based on the following narrative:

> Mrs. Faye Wigley stated she was only an employee of [CSS]. She was listed on the bank signature cards and she signed numerous payroll checks. Per 4180 interview with Mr. Zachary M. Wigley, she made and *authorized* bank deposits and she paid other corporate liabilities. She had the authority, responsibility and duty to collect, truthfully account for and turn over the payroll tax. She knowingly and willfully failed to do so.

*Id.* at 4–5 (emphasis added).

While working for her son at CSS, Faye Wigley, among other things, wrote checks on behalf of CSS and made payments to creditors and employees of CSS. In fact, Faye Wigley was an authorized signatory on CSS' bank account at JPMorgan Chase Bank ("Chase"). *Id.* at 7. Faye Wigley signed checks on CSS' behalf at least through November of 2003. Gov't Exh. 15 at 11–13.

Notwithstanding the fact that Fay Wigley was an authorized signatory on the CSS account at Chase, Zach testified at the hearing on the Motion that his mother had no authority to sign checks on behalf of CSS without his approval. Further, Zach testified that his mother was not an officer of CSS, that she was not a manager of CSS, that she had no authority to hire or fire employees of CSS, and that she made no decisions regarding who to pay out of CSS' funds. Not surprisingly, Faye Wigley's testimony mirrored her son's testimony. However, Zach's prior statements to the IRS, as reflected in the IRS' trust fund recovery penalty file, are inconsistent with his hearing testimony. Gov't Exh. 9 at 4–5.

This troublesome tendency to neglect trust fund tax obligations did not cease with the demise of CSS; Zach testified at the hearing on the Motion that his latest stucco business, State Line, has failed to pay its trust fund taxes to the IRS.

## III. Legal Analysis

### A. The "Responsible Person" Inquiry

■ Pursuant to 26 U.S.C. §§ 3102 and 3402, employers are required to withhold federal income and social security taxes from their employees' wages. *Barnett v. Internal Revenue Svc.*, 988 F.2d 1449, 1453 (5th Cir.1993). Those collected funds are then held in trust for the benefit of the United States before being paid over to the government. *Johnson v. United States (In re Johnson)*, 283 B.R. 694, 700 (Bankr.N.D.Tex.2000). The funds are unavailable for use by the business. *Id.* In the event that the trust fund taxes are not

---

8. The IRS contends that the failure to disclose the taxpayer identification number for CSS and its dates of operation hindered the IRS'

ability to determine that it had a claim against Zach.

paid by the employer, 26 U.S.C. § 6672(a) [9] "imposes a penalty equal to the entire amount of the unpaid taxes on 'any person' required to collect, account for, or pay over the withheld taxes, who 'willfully' fails to do so." *Barnett*, 988 F.2d at 1453. "Liability for the penalty is established if a person is a 'responsible person' who 'willfully' failed to pay over the withheld taxes." *Id.* "A responsible person is any person who performs *any one of the three functions* specified in the statute." *Id.* at 1453 n. 6 (emphasis added). For purposes of § 6672(a), a "person" includes, *inter alia,* "an officer or employee of a corporation." 26 U.S.C. § 6671(b) (2000).[10]

■ The Fifth Circuit takes a broad view of who can be a responsible person for purposes of liability under § 6672. *Barnett*, 988 F.2d at 1454. Responsibility "is determined by looking to one's status within a corporation—that is, one's duty and authority to withhold and pay taxes." *Id.* "[R]esponsibility does not require knowledge that one has that duty and authority." *Id.* "The crucial inquiry is whether a party ... by virtue of his position in (or vis-a-vis) the company, could have had 'substantial' input in [withholding and paying the trust fund taxes], had he wished to exert his authority." *Id.* at 1455. In responsible-person cases, "once the Government offers an assessment into evidence, the burden of proof is on the

taxpayer to disprove his responsible-person status or willfulness." *Id.* at 1453.

■ In determining responsible person liability, the Fifth Circuit has developed certain indicia of responsibility that imply an authority on the part of a person in making general and financial decisions for an enterprise. These indicia include whether a person:

(i) is an officer or member of the board of directors; (ii) owns a substantial amount of stock in the company; (iii) manages the day-to-day operations of the business; (iv) has the authority to hire or fire employees; (v) makes decisions as to the disbursement of the funds and payment of creditors; and (vi) possesses the authority to sign company checks.

*Id.* at 1455. However, "[n]o single factor is dispositive;" indeed, this Circuit treats the issue of whether one is a responsible person as "essentially a question for the fact-finder." *Id.* at 1454–55. A person cannot "disqualify himself from responsible [person] status simply because he does not fit into every category" ever delineated by the courts. *Raba v. United States*, 977 F.2d 941, 944 (5th Cir.1992).

■ The cases resulting in a responsible person finding for purposes of liability under § 6672 in the Fifth Circuit are legion. *See Barnett*, 988 F.2d at 1454 n. 10. In fact, "cases *not* finding § 6672 responsibili-

---

9. Section 6672(a) states as follows:

> Any person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 or part II of

> subchapter A of chapter 68 for any offense to which this section is applicable.

26 U.S.C. § 6672(a) (2000).

10. The entirety of section 6671(b) states as follows:

> The term "person", as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.

26 U.S.C. § 6671(b) (2000).

ty are relatively few and far between." *Id.* at 1456. "[T]he rationale for the broad net of § 6672 responsibility serves a valuable prophylactic purpose: it encourages officers, directors, and other high-level employees to stay abreast of the company's withholding and payment of employee's taxes." *Id.* at 1456–57. This "broad net" of liability can extend beyond the *most* responsible person; in reality, multiple persons can be deemed responsible for purposes of § 6672 liability. *Id.* at 1455. For instance, though an employee may not have the final say as to financial disbursements made by the employer, where the employee nonetheless has "significant control over disbursements[, it] is sufficient for section 6672 liability to attach." *Neckles v. United States,* 579 F.2d 938, 940 (5th Cir.1978) (holding that non-officer, non-employee who was, in reality, a de facto officer or employee of corporation, and who had significant control over disbursements made by the corporation, was "responsible person" for purposes of § 6672 liability where he had failed to insure payment of trust fund taxes of corporation while continuing payment of other corporate creditors).

■ Based on the facts of this Case, the Court concludes that Faye Wigley is a responsible person for CSS' trust fund tax liability to the IRS. In coming to this conclusion, the Court disregards much of the testimony of Faye and Zach Wigley, which was, in short, incredible.

The thrust of Zach's testimony, which his mother repeated, was that Faye Wigley, the former Treasurer and Secretary of FQS, with years of experience in keeping the books and records of her husband's stucco business, simply became an employee of her 19–year–old son's new and first stucco business without any management responsibilities for that new startup company. Zach and Faye Wigley want this

Court to believe that Faye Wigley handled purely administrative tasks for CSS under Zach's sole supervision and direction. This the Court cannot do, as it makes no sense under the facts of this Case.

It is simply unbelievable that Faye Wigley, with her years of experience in managing the financial side of her husband's stucco business, had no financial managerial responsibility and authority at CSS. When CSS was formed, Zach Wigley was 19 years old and had never run a business before. In fact, Zach still lived at home with his parents when CSS was incorporated. As evidence of his inexperience in the stucco business, after starting CSS, Zach testified that he looked to his father, Don Wigley, supposedly a new CSS employee, to bid all his CSS stucco jobs. In fact, Zach testified that he still relies on his father to perform this valuable function for his current stucco business, State Line, some four years later. Not only did Zach lack experience in bidding stucco jobs when he formed CSS, at 19 he had no experience on the financial side of the stucco business either. It is unbelievable that Zach did not ask his mother to do for him what she had done for his father for years—i.e., run the financial side of CSS' stucco business. Faye Wigley admittedly had signatory authority on CSS' bank account at Chase, and she wrote checks to pay vendors and employees of CSS on that account.

Moreover, it is simply incredible that when the Debtors' son formed his "new" business shortly before their Chapter 13 filing, which was precipitated solely because of the Debtors' trust fund tax liability as responsible persons of FQS, neither Don nor Faye Wigley discussed their tax problems with their son to insure that he did not fall into the same trap that they had fallen into. Any parents would want to protect a young man just starting out in

business from their prior business mistakes. Yet, the Wigleys would have this Court believe that they were ignorant of their son's failure to pay CSS' trust fund taxes to the IRS on a timely basis, and that there was nothing they could do to make sure that the taxes were timely paid—i.e., that they had no ability to control the payment of CSS' trust fund taxes. That also is unbelievable.

First, and at a minimum, Faye Wigley had to know that CSS was not fully paying its trust fund taxes to the IRS. She could have determined this fact from simply looking at the CSS check register or the Chase bank statements. If she truly did not know that CSS had failed to completely pay its trust fund taxes to the IRS, it is because she willfully chose not to look at the check register or bank statements or make further inquiries upon her inspection thereof. It is clear to the Court that Faye Wigley could have had substantial input in insuring the full payment of CSS' trust fund taxes if she had wished to exert her authority over Zach, her 19–year–old son. All she had to do was tell Zach that if the trust fund taxes were not paid, she would no longer assist him with CSS' books and records because of her potential liability to the IRS for those unpaid taxes. If Zach persisted in putting his mother at risk financially for these trust fund taxes, she could have declined to run the office for him.

Finally, the repeating Wigley pattern of failing to pay business trust fund taxes, shutting that business down, forming a new entity through which to run the family business, and then filing bankruptcy to attempt to discharge the unpaid taxes evidences abuses of the bankruptcy laws that this Court cannot countenance. To believe the testimony of Faye Wigley and Zach, one must turn a blind eye to the uncanny resemblance between the pattern of behav-

ior during the business operations of FQS, then CSS, and now State Line. This the Court cannot do.

Based upon the facts of this Case, the Court concludes that Faye Wigley had, or could have had, substantial input into insuring that the trust fund taxes owed by CSS were paid. Because the amount of control that Faye Wigley either exercised, or could have exercised, over the financial affairs of CSS extended beyond that of a mere administrative employee, the Court concludes that Faye Wigley is a responsible person of CSS for purposes of § 6672(a). In short, the Debtors failed to offer credible testimony or other evidence meeting their burden of disproving Faye Wigley's responsible-person status once the IRS offered its assessment of her for CSS' trust fund tax liability into evidence.

**B. The "Willfulness" Inquiry**

■■■ Finding Faye Wigley to be a responsible person does not, by itself, mean that she is liable for CSS' trust fund taxes; Faye Wigley must also be found to have " 'willfully' failed to collect, account for, or pay over withheld taxes." *Barnett,* 988 F.2d at 1457. Indeed, "the willfulness inquiry is the sifter in most § 6672 cases." *Id.* Willfulness, as used in this context, does not connote a "bad motive or evil intent[;]" rather, "only a voluntary, conscious, and intentional act" is required. *Id.* "Willfulness is normally proved by evidence that the responsible person paid other creditors with knowledge that the withholding taxes were due at the time to the United States." *Id.* Where a responsible person has knowledge of owed trust fund taxes, payment of creditors instead of the United States will normally constitute willfulness as a matter of law. *Id.*

In *Mazo v. United States,* the Fifth Circuit found that certain responsible persons' payment of creditors after receiving

actual knowledge of delinquent trust fund taxes was willful, even in light of statements by the corporate controller that he would take care of the delinquency. 591 F.2d 1151, 1157 (5th Cir.1979). The court concluded that allowing responsible persons the ability to circumvent liability for known owed trust fund taxes through a mere delegation of their responsibility would be inconsistent with the statutory concept of willfulness. *Id.*

Moreover, beyond situations in which a responsible person has actual knowledge of delinquent trust fund taxes, the *Mazo* court noted that willfulness can be found where a "responsible person acts with a reckless disregard of a known or obvious risk that trust funds may not be remitted to the Government, such as by failing to investigate or to correct mismanagement after being notified that withholding taxes have not been duly remitted." *Mazo,* 591 F.2d at 1154 (internal citations omitted). And, in *In re Chabrand,* a responsible person was found to have acted willfully by failing to pay owed trust fund taxes when he disregarded his duty to make inquiries and insure that the taxes were being timely paid to the government. 301 B.R. 468, 480 (Bankr.S.D.Tex.2003). Even though he had delegated the withholding function and was not directly involved in the withholding process, the court found that the dire financial situation of the company and the employee's knowledge that the company was having difficulty paying other creditors made obvious the need for further inquiry on his part. *Id.*

Here, it is inconceivable that Faye Wigley, an authorized signatory on the Chase account who wrote numerous checks to vendors and employees, did not know of CSS' failure to pay its trust fund taxes to the IRS. Given the repeated Wigley pattern of nonpayment of trust fund taxes followed by bankruptcy filings, if Faye Wigley did not know of her son's and CSS' failure to pay the trust fund tax liability to the IRS, it is because she chose not to know. She could have exercised substantial control over the decision-making process in order to insure that CSS paid its trust fund tax liability if she had chosen to. Instead of insuring that those taxes were paid, she apparently turned a blind eye to the situation and chose not to exert any authority over her son.

Given the similarity of operations between FQS and CSS, and the familial relationship of the individuals involved, the Court concludes, at a minimum, that Faye Wigley had a duty to inquire into whether CSS was meeting its tax obligations. Her failure to do so constitutes a willful failure to collect, account for, or pay over taxes owed by CSS.

Because this Court concludes that Faye Wigley is a "responsible person" for purposes of § 6672, and because Faye Wigley acted willfully in failing to ensure payment of CSS' trust fund taxes, Faye Wigley is liable for CSS' tax liability to the IRS.

## IV. The Dismissal for "Cause" Analysis

Pursuant to § 1307(c) of the Bankruptcy Code, a Chapter 13 case can be dismissed for cause. *Stathatos v. Trustee (In re Stathatos),* 163 B.R. 83, 87 (N.D.Tex.1993). The enumerated grounds for cause listed under § 1307(c) are "illustrative, not exhaustive." *In re Parffrey,* 264 B.R. 409, 413 (Bankr.S.D.Tex.2001). "Lack of good faith is 'cause' for dismissal." *Stathatos,* 163 B.R. at 87. A debtor's failure to pay postpetition taxes also constitutes "cause" for dismissal of a Chapter 13 case. *In re Kathryn M. Robertson,* 2000 WL 33716977, at *2, 2000 Bankr.LEXIS 1929, at *8 (Bankr.D.Ore. 2000); *see also In re King,* 217 B.R. 623, 626 (Bankr.S.D.Cal.1998) (holding that fail-

ure to pay postconfirmation taxes claimed by IRS pursuant to 11 U.S.C. § 1305 and provided for under terms of plan was cause for dismissal); *In re Bennett,* 200 B.R. 252, 254–55 (Bankr.M.D.Fla.1996) (holding that debtor's failure to pay post-confirmation taxes pursuant to terms of court order constituted cause for dismissal as a lack of good faith).

In *Robertson,* the court was faced with a motion to dismiss under § 1307 filed by the State of Oregon for the debtor's failure to pay certain postpetition income taxes. 2000 WL 33716977, at *1, 2000 Bankr.LEXIS 1929, at *1. In holding that the failure to pay the owed income taxes was cause for dismissal, the court emphasized the purpose behind Chapter 13—i.e.,

> to allow an honest debtor the opportunity to pay her debts, or at least some of them, through application of future assets, such as income, as opposed to the liquidation of present assets. *Willful avoidance* by a debtor of legal obligations as they become due postpetition is inconsistent with Congress' purpose in establishing Chapter 13.

*Id.,* 2000 WL 33716977, at *2, 2000 Bankr.LEXIS 1929, at *6–*7 (internal citation omitted) (emphasis added).

Besides being contrary to the purposes behind allowing the debtor the protections of Chapter 13, the *Robertson* court noted that the failure to pay postpetition tax claims could subject prepetition creditors provided for in the debtor's plan to prejudicial treatment, because postpetition tax creditors would be able to enforce their rights to payment unencumbered by the protections provided to the debtor under the Bankruptcy Code regarding prepetition claims. *Id.,* 2000 WL 33716977, at *2, 2000 Bankr.LEXIS 1929, at *7. Use of these enforcement tools by postpetition creditors could limit the debtor's ability to comply with the plan's requirements, pos-

sibly injuring the prepetition creditors bound by the terms of the plan. *Id.*

According to the *Robertson* court, faced with having to choose between making mandatory postpetition tax payments and making mandatory plan payments, the debtor is, in actuality, faced with nothing more than a Hobson's choice; once ensnared in this self-imposed and perplexing predicament, a debtor will be forced to neglect one of the equally valid and owed payments in favor of the other, "effectively destroying the rehabilitative effect of the plan, and thus the plan's very purpose." *Id.,* 2000 WL 33716977, at *2, 2000 Bankr.LEXIS 1929, at *7–*8. Such circumstances constitute cause for dismissal of a debtor's Chapter 13 case. *Id.,* 2000 WL 33716977, at *2, 2000 Bankr.LEXIS 1929, at *8.

The courts of the Northern District of Texas are no strangers to dismissing Chapter 13 cases for cause under the rubric of a "lack of good faith." In *In re Gonzalez,* the court, citing *In re Koval,* 205 B.R. 72 (Bankr.N.D.Tex.1996), held that the debtors' failure to file their postpetition income tax returns and pay their postpetition income taxes was grounds for dismissal. 2005 WL 1819948, at *2 (Bankr. N.D.Tex.2005). Specifically, the *Gonzalez* court held that the debtors lacked good faith because of their failure to comply with the Northern District of Texas' standing order concerning the administration of cases filed under Chapter 13. *Id.* Noting a similarity to the facts in *Koval,* the *Gonzalez* court found that the debtors' habits of failing to pay prepetition taxes had continued, unabated, postpetition, and it reiterated the words of the *Koval* court:

> "Debtors should not be able to afford themselves of the special and equitable benefits afforded by the Bankruptcy Code while ignoring the duties and responsibilities imposed by the Tax Code.

It is not good faith for Debtors to file Chapter 13 bankruptcy and then continue to earn income but not pay the postpetition taxes on that income."

*Id.* (quoting *Koval,* 205 B.R. at 76).

## V. Conclusion

■ Here, Faye Wigley's failure to make postpetition tax payments for trust fund taxes she owes as a responsible person of CSS constitutes cause for dismissal of the Case. By seeking the protections and benefits offered by the Bankruptcy Code, while° continuing their unscrupulous pattern of tax evasion, the Debtors have willfully avoided their postpetition obligations, thus acting in direct contravention of the fundamental purposes underlying Chapter 13 reorganization. The Debtors' conduct evidences a lack of good faith, causing this Court to conclude that the Debtors are not deserving of the fresh start the bankruptcy laws of this country afford honest but unfortunate debtors. The Debtors have not dealt honestly with the IRS,[11] and their repeating pattern of tax evasion warrants dismissal of the Case for cause. This dismissal is with prejudice to refiling for a period of one year.

**SO ORDERED.**

11. While the Debtors' conduct cannot be countenanced, the IRS is not free from responsibility for at least a portion of the problems the IRS complains of here. As noted earlier, the IRS apparently misapprehended the Debtors' obligations under the Agreed Order; in fact, there were none. Moreover, after assessing the Debtors for FQS' trust fund taxes, the IRS never bothered to file a proof of claim in the Case. Finally, after having been given notice of the hearing on confirmation of the Plan and the IRS' proposed treatment as a late-filed claimant, the IRS did nothing to protect itself. Had Faye Wigley not incurred postpetition tax liability as a responsible person for CSS' trust fund taxes, it is likely that the Debtors would have been entitled to a Chapter 13 discharge of substantial amounts of their liability for FQS' trust fund taxes—a claim with priority over other creditors. And, the reason why the IRS would not have been paid in full under the Plan, when the provisions of Chapter 13 are designed to insure that priority tax claims are fully paid, would be directly attributable to the fact that the IRS failed to file a proof of claim in the Case prior to the governmental bar date.